WILLIAM CHARLES KARPF ET AL., APPELLANTS, V. CHARLES T. KARPF, INDIVIDUALLY AND AS TRUSTEE OF THE HENRY S. KARPF TRUSTS, APPELLEE.

481 N.W.2d 891

Filed March 27, 1992. ´ No. S-89-729.

Craig A. Knickrehm and Paul J. Halbur, of Heron, Burchette, Ruckert & Rothwell, for appellants.

Michael McCormack, of McCormack, Cooney, Mooney, Hillman & Elder, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

## I. INTRODUCTION

The plaintiff-appellant Amanda M. Karpf and two of her minor children, William Charles Karpf and Chloe Marie Karpf, through her as their guardian and next friend, seek redress for the breach of the fiduciary duty owed them, as limited beneficiaries of the Henry S. Karpf Trusts, by the defendant-appellee, Charles T. Karpf, as trustee. The district court dismissed the limited beneficiaries' petition, which also seeks damages from the trustee as an individual. They assign as operative errors, in summary, (1) the district court's evidential rulings, and (2) its determination that the trustee did not violate his duty to them. We affirm.

## II. FACTS

Lodicea A. Karpf, on December 24, 1979, and February 18, 1982, established eight separate trusts for the ultimate benefit of her four grandchildren, all the offspring of the aforenamed trustee. This action arises out of the two trusts established for the benefit of Henry S. Karpf, the son of the trustee for whom the trusts involved here were named. Henry S. Karpf (hereinafter referred to as the son) married the plaintiff Amanda M. Karpf (hereinafter referred to as the wife) in April 1978. The two were divorced in July 1988, after they had produced three children. The youngest child is not a party to this proceeding, presumably because he was not in existence during any of the period in dispute.

One provision of the 1979 trust, the discretionary distribution provision, reads:

The Trustee in his sole discretion may accumulate the income of the Trust or may, at any time and from time to time, distribute any part or all of the income and principal of the Trust to [the son], the issue of said [son] and the spouse of said [son], and, in the event of the death of such [son] and all the issue of such [son], thereafter to or among

the spouse of such [son] and [settlor's] other grandchildren and the issue of such grandchildren.

Another provision of that trust, the withdrawal provision, declares:

With respect to each donor who transfers assets to this Trust in any one calendar year, [the son], such [son's] spouse and each issue of such [son] shall each have the right to withdraw from the principal of this Trust and to retain as their own separate property the lesser of (a) $3,000, or (b) a pro rata share of the aggregate value for federal gift tax purposes of the assets transferred to the Trust in such calendar year by such donor. Such withdrawals shall be made by a written instrument signed by the person making the withdrawal, or such person's guardian, and delivered to the Trustee at any time prior to the expiration of the calendar year in which the donor's transfer to the Trust is made.

The 1982 trust contained identical provisions, except that the discretionary distribution provision eliminated the wife as a beneficiary and the withdrawal provision increased the maximum amount to $10,000.

The record explains that the withdrawal provision is a tax-planning device used to assist taxpayers in minimizing ultimate estate tax liability by enabling them to make tax-free gifts during their lifetimes to the amount limited by law. In order to qualify as a tax-free gift, the taxpayer must transfer a "present," as contrasted from a "future," interest. To be a present interest, a gift to the beneficiary of a trust must be subject to withdrawal by the beneficiary in the calendar year during which the gift was made. (As an aside, we note that in apparent honor of D. Clifford Crummey, who established that gifts to minors are transfers of present interests, see *Crummey v. C. I. R.*, 397 F.2d 82 (9th Cir. 1968), limited withdrawal provisions are often identified as Crummey provisions, and trusts containing such provisions are frequently referred to as Crummey trusts.)

When the 1982 trust was executed, the exclusion for a single gift was $10,000, 26 U.S.C. § 2503(b) (1982); however, at the time the 1979 trust was executed, the exclusion was limited to

$3,000, § 2503(b) (1976). The amount of the exclusion was and is multiplied by the number of gifts made. See § 2503(b) (1976 and 1982).

Although the trusts refer to "each donor" transferring assets to the trust, there was in each instance but a single such donor, the aforenamed settlor, who transferred to the trusts certain common stock of Bailey & Bailey Co., a Nebraska corporation which owns a farm in Scotts Bluff County and is engaged in agri-business. More specifically, the settlor transferred 10 shares of Bailey & Bailey common stock to the 1979 trust as follows: On December 24, 1979, two shares; on January 2, 1980, two shares; on January 2, 1981, two shares; and on January 9, 1984, four shares. She transferred 14 shares to the 1982 trust as follows: On February 18, 1982, nine shares, and on January 3, 1983, five shares. At the time of the settlor's death in 1985, all 200 outstanding shares of Bailey & Bailey common stock were owned by the trustee and the trusts. No one exercised the right of withdrawal.

The wife claims that neither she nor the two minor limited beneficiaries knew of the existence of the trusts until the fact was revealed during the course of the aforementioned divorce proceeding. She alleges that the trustee breached his fiduciary duty in failing to inform her and the children personally of the trusts. In defense, the trustee claims he did not breach his duty, since the son had been informed of the trusts, and that, in any event, the settlor did not intend anyone to actually exercise the withdrawal rights, having said that if anyone did, she would no longer transfer assets to the trusts.

The trustee admitted he did not inform anyone in writing about the existence of the 1979 trust nor about any of the contributions of Bailey & Bailey stock, but did tell the son of the trust's existence. With respect to the 1982 trust, the son received a copy of a letter written by the attorney for the settlor and trustee which outlined its terms, including the withdrawal rights. The trustee also testified that as he did not consider the wife to be a beneficiary of either trust, he never spoke to her about the trusts, nor made any attempt to keep her informed as to their administration.

The son's testimony confirmed his knowledge of the trusts.

He also testified that the trustee told him in December 1979 that if he "took anything out, it would be the last time." Thereafter, the son learned through the trustee of each transfer of stock into the 1979 trust and of the subsequent formation of the second trust in 1982.

The son reported that he and the wife had discussed the existence of the trusts on numerous occasions. The son also recalled that after the settlor had died and members of the family were cleaning her house, he found a document that listed the shares of stock given to the trusts, which the wife read. She acted perturbed because the son's older brother had received more shares than the son had.

The aforementioned attorney testified that the withdrawal rights under the trusts could be exercised by any of the parties but that the settlor intended not to transfer further assets to any trust if, in fact, the withdrawal rights were actually exercised.

> If they withdraw, illustration in this case, the 1979 trust, the most that [the] wife could have withdrawn is one share. She withdraws one share, it's one out of 200, it's no big deal as far as carrying out the total scope of your estate plan, and it's easily controlled. If anybody exercises any withdrawal rights in any particular year, you'll simply not make any additional transfers in any subsequent years to any trusts for them and you'll have the option of whether you want to do anything for them in the future. So, you put it in there, they clearly have the right to withdraw, but if anybody does exercise the right to withdraw, you simply choose not to make any additional gifts in any future years, and that was her intent.

According to the attorney, it was the settlor's wish to keep control of Bailey & Bailey with the trustee. Since other tax problems would have arisen had the settlor merely given the trustee the stock, the trusts were established, granting the trustee the power to vote the stock, thus effectively giving him control of the corporation while avoiding the other tax problems.

The trustee testified along the same lines, saying that the settlor informed him that the trusts were set up for the benefit of the grandchildren, but were to be controlled by him until he

died. Further, the withdrawal rights were "not to be used indiscriminately," and if there were withdrawals, the settlor would transfer no more stock to the trusts.

The record establishes that both the son and the wife had reasons beyond the prospect of future gifts to the trusts not to antagonize either the settlor or the trustee. The trustee provided the son and the wife with $2,000 a month for a period of 8 months while the son was unemployed. The trustee also paid $5,000 in medical expenses for one of the son's children. The settlor made the downpayment on a house, enabling the son and the wife to purchase it. In addition, the settlor occasionally paid the wife $500 to mow the yard and do yard work.

Against that background, the wife, when asked whether she would have exercised her withdrawal rights had she known of them, responded: "I don't know. I didn't know about it. I don't know what I would have done. I can't say."

## III. ANALYSIS

### 1. EVIDENTIAL RULINGS

The limited beneficiaries claim the district court erred in receiving parol evidence to establish the settlor's intent, as such evidence contradicts the express terms of the trusts. It is their position that the trust agreements are facially unambiguous, and, therefore, such evidence was inadmissible. Conversely, the trustee contends the discretionary distribution and withdrawal provisions are "diametrically opposed" to each other, brief for appellee at 7, requiring the use of extrinsic evidence to settle the ambiguity thus created.

In *Conway v. County of Adams*, 171 Neb. 677, 680, 107 N.W.2d 418, 420 (1961), this court wrote: "[R]ules of construction of trusts are intended for use in doubtful cases when language used is not clear, but these rules have no application when . . . the language used clearly expresses the settlor's intent." When implicated, the "primary rule of construction is that the court must, if possible, ascertain the intention of the testator or creator of the trust." *Wood v. Lincoln General Hospital Assn.*, 205 Neb. 576, 583, 288 N.W.2d 735, 739 (1980). It is also the rule that in interpreting a trust, the entire instrument, all its parts, and its general purpose

and scope are to be considered; no parts are to be disregarded as meaningless if any meaning can be given them consistent with the rest of the instrument. See *County of Holt v. Gallagher*, 156 Neb. 457, 56 N.W.2d 621 (1953).

So read, the discretionary distribution and withdrawal provisions are not in conflict with each other; rather, they combine to provide that the trustee has discretion to make distributions as he sees fit, subject, however, to the various beneficiaries' specified rights of withdrawal. Thus, the trusts are not ambiguous.

However, the lack of ambiguity does not mean the limited beneficiaries are correct in asserting that the challenged evidence is inadmissible, for the evidence does not, as they claim, contradict the express terms of the trust. It is true that, according to the record, any effort to extinguish the withdrawal rights prior to their exercise would have defeated the purpose of the trusts. "Unless the donee is entitled unconditionally to the present use, possession, or enjoyment of the property transferred, the gift is one of a future interest for which no exclusion is allowable under the statute." *French v. Commissioner of Internal Revenue*, 138 F.2d 254, 257 (8th Cir. 1943); *Chanin v. United States*, 393 F.2d 972 (Ct. Cl. 1968); *Estate of McClure*, 608 F.2d 478 (Ct. Cl. 1979). Thus, had the trusts granted withdrawal rights and also expressly provided that the rights could not be exercised, the present interest would be in doubt and the purpose of the trusts would be jeopardized. A taxpayer may not take advantage of a tax law and, concurrently, diffuse its intent.

> The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. [Citations omitted.] But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended.

*Gregory v. Helvering*, 293 U.S. 465, 469, 55 S. Ct. 266, 79 L. Ed. 596 (1935). See *Rolin v. C. I. R.*, 588 F.2d 368 (2d Cir. 1978).

The challenged evidence establishes not that the settlor sought to extinguish the withdrawal rights before they were exercised, but only that once exercised, no future transfers to

the trusts would be made. Neither does the challenged evidence suggest that once the withdrawal rights were exercised, the settlor would have attempted to reclaim any tax-free transfer she had made. There is nothing which suggests that once the settlor made a tax-free transfer to the trusts, she was obligated to continue making them each and every year thereafter as long as she lived. It was her prerogative to make or not to make future transfers and to condition her making of them as she saw fit.

Thus, the district court did not err in receiving the challenged evidence.

## 2. BREACH OF DUTY

This brings us to the question of whether the trustee breached his duty to the limited beneficiaries. A trust creates a "fiduciary relationship in which one person holds a property interest subject to an equitable obligation to keep or use that interest for the benefit of another." *Jaiser v. Milligan*, 120 F. Supp. 599, 612 (D. Neb. 1954); *Parker v. Bourke*, 131 Neb. 617, 269 N.W. 102 (1936). The standard of care to be exercised by a fiduciary in administering a trust is codified in Neb. Rev. Stat. § 30-2813 (Reissue 1989): "[T]he trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another . . . ." *In re Conservatorship of Estate of Martin*, 228 Neb. 103, 421 N.W.2d 463 (1988), declares that § 30-2813 places an external rather than a personal standard of care on a trustee, requiring the trustee to act as would an individual investing property for people to whom the trustee feels morally bound. Michigan, having adopted the same standard of care, noted that "[t]o be prudent includes acting with care, diligence, integrity, fidelity and sound business judgment." *In re Green Charitable Trust*, 172 Mich. App. 298, 313, 431 N.W.2d 492, 498 (1988).

Furthermore, with respect to a trustee's duty to keep the beneficiaries informed, Neb. Rev. Stat. § 30-2814 (Reissue 1989) provides:

> The trustee shall keep the beneficiaries of the trust reasonably informed of the trust and its administration, and, unless otherwise provided in the trust instrument, in

addition:

(a) Within thirty days after his acceptance of the trust, the trustee shall inform in writing the current beneficiaries
. . . .

(b) Upon reasonable request, the trustee shall provide the beneficiary with a copy of the terms of the trust which describe or affect his interest and with relevant information about the assets of the trust and the particulars relating to the administration.

(c) Upon reasonable request, a beneficiary is entitled to a statement of the accounts of the trust annually and on termination of the trust or change of the trustee.

In *St. Paul Fire & Marine Ins. Co. v. Truesdell Distributing Corp.*, 207 Neb. 153, 157, 296 N.W.2d 479, 482 (1980), this court wrote that a "trustee has a duty to fully inform the beneficiary of all material facts so that the beneficiary can protect his own interests where necessary." In essence, the trustee is responsible to the beneficiary and only holds the assets in the trust for that purpose.

As said in George G. Bogert, The Law of Trusts and Trustees § 961 at 2 (rev. 2d ed. 1983):

The beneficiary is the equitable owner of the trust property, in whole or in part. The trustee is a mere representative whose function is to attend to the safety of the trust property and to obtain its avails for the beneficiary in the manner provided by the trust instrument. That the settlor has created a trust and thus required that the beneficiary enjoy his property interest indirectly does not imply that the beneficiary is to be kept in ignorance of the trust, the nature of the trust property and the details of its administration. If the beneficiary is to be able to hold the trustee to proper standards of care and honesty and to obtain the benefits to which the trust instrument and doctrines of equity entitle him, he must know of what the trust property consists and how it is being managed.

The fact that the trustee was given discretionary distribution powers did not arm him with the right to act just as he pleased. Even trustees given broad discretion are held to a standard of

good faith, *Scully v. Scully*, 162 Neb. 368, 76 N.W.2d 239 (1956), and honesty, *Moss v. Axford*, 246 Mich. 288, 224 N.W. 425 (1929). "[A] trustee owes beneficiaries of a trust his undivided loyalty and good faith, and all his acts as such trustee must be in the interest of the cestui que trust and no one else." *State ex rel. Ebke v. Board of Educational Lands and Funds*, 154 Neb. 244, 249, 47 N.W.2d 520, 523 (1951).

Although there are vague references in the record to moments when the wife may have learned of the trusts, the trustee did not comply with the requirements of § 30-2814. Thus, contrary to the district court's finding, the trustee did breach his duty to the limited beneficiaries, and, as a consequence, they neither knew of nor had an opportunity to exercise their rights or watch over the trusts.

## IV. DAMAGES

The determination that the trustee breached his duty to the limited beneficiaries makes it necessary that we reach a question the district court did not, the matter of damages.

The limited beneficiaries' argument assumes that they would have exercised their withdrawal rights each and every time stock was deposited in the trust under which they were limited beneficiaries. The first difficulty with this claim is that, based on the record, they could exercise their withdrawal rights once, and once only; once exercised, no further opportunity would arise.

A further difficulty with the claim from the wife's point of view is that she clearly and unequivocally testified she cannot represent she would have exercised her withdrawal rights even if she had known of them. This is quite understandable, for she knows that the exercise of her withdrawal rights would have caused the settlor to forgo future transfers to the trust. While it is uncertain, speculative, and conjectural to wonder whether exercise of the rights might also have caused the settlor and trustee to be less generous in other matters than they had been in the past, it would be equally uncertain, speculative, and conjectural to grant the wife damages in the face of her inability to swear that she would have exercised her rights. See *Shadow Isle, Inc. v. Granada Feeding Co.*, 226 Neb. 325, 411 N.W.2d

331 (1987) (damages which are uncertain, speculative, or conjectural cannot be a basis for recovery).

That leaves the minor limited beneficiaries, who could only act through their guardians, the son and the wife. See Neb. Rev. Stat. § 30-2608 (Reissue 1989) (parents are natural guardians of their minor children). Since the wife does not know what she would have done and the son makes no claim he would have exercised the withdrawal rights on their behalf, neither can any damages be awarded to the minor limited beneficiaries.

## V. RULING

Inasmuch as a correct result will not be set aside merely because it is based on incorrect reasoning, *Logan Ranch v. Farm Credit Bank*, 238 Neb. 814, 472 N.W.2d 704 (1991), the judgment of the district court, as first said in part I, is affirmed.

AFFIRMED.