REQUESTED BY: Anna J. Sullivan, Acting Director Nebraska Public Employees Retirement Systems
You have requested the opinion of the Attorney General regarding the authority of the Public Employees Retirement Board to cancel outstanding warrants and concerning qualification requirements for retirement plans under the Internal Revenue Code. Three questions are asked relating to suspension of benefits including the stop payment of state warrants issued for payment of benefits and the implication of these actions under Internal Revenue Code provisions.
The factual background you briefly describe is that the state warrants issued have not been negotiated (cashed) and the Public Employees Retirement Systems has no "information that the member or beneficiary has died or that the payment is improper." It is further related that the "State Auditor suggested that NPERS initiate procedures to cancel outstanding warrants before the one year period expires so that the funds could be credited to the retirement funds rather than the general fund."
Our conclusions with respect to each of the three questions you have posed are set forth separately below.
 I. WHAT AUTHORITY DOES NPERS HAVE TO SUSPEND RETIREMENT BENEFIT PAYMENTS AND CANCEL OUTSTANDING WARRANTS MADE PAYABLE TO A MEMBER OR BENEFICIARY IN THE ABSENCE OF INFORMATION THAT THE MEMBER OR BENEFICIARY HAS DIED OR THAT THE PAYMENT IS IMPROPER?
The Public Employees Retirement Systems has general and specific statutory authority as well as the obligation to suspend benefit payments and cancel outstanding warrants for any valid reason.
The authority of the Public Employees Retirement Board to suspend benefit payments and stop payment of state warrants derives from the authority vested in the Retirement Board for administering the retirement systems and in the exercise of the Board's fiduciary responsibilities.[1] The duties of the Retirement Board are partially enumerated in Neb. Rev. Stat. § 84-1503 (Cum. Supp. 1996) which in substantive part states:
 (1) It shall be the duty of the Public Employees Retirement Board:
 (a) To administer the retirement systems provided for in the County Employees Retirement Act, the Judges Retirement Act, the Nebraska State Patrol Retirement Act, the School Employees Retirement Act, and the State Employees Retirement Act. The agency for the administration of the retirement systems and under the direction of the board shall be known and may be cited as the Nebraska Public Employees Retirement Systems; . . .
The suspension of benefit payments and stop payment of outstanding warrants would achieve the purposes of the various retirement acts establishing the retirement systems and insure that retirement funds are used for the exclusive benefit of members and their beneficiaries. It is well established that administrative bodies and agencies have only that authority specifically conferred upon them by statute or by construction necessary to achieve the purpose of the relevant act. Jolly v.State, 252 Neb. 289, 562 N.W.2d 61 (1997); Centra, Inc. v.Chandler Ins. Co., Ltd., 248 Neb. 844, 540 N.W.2d 318 (1995),cert. denied 116 S.Ct. 168, 517 U.S. 1191, 134 L.Ed.2d 786. The actions of suspending benefit payments and cancelling outstanding warrants are actions that would fall with the scope of duty and authority of the Retirement Board to administer the retirement systems.
Further, specific authority exists for the stop payment of outstanding state warrants. Neb. Rev. Stat. § 77-2215 (1996) in particular part states:
 (2) Whenever it shall have come to the attention of the Director of Administrative Services that an outstanding warrant has not been presented for payment, the Director of Administrative Services shall immediately issue a stop-payment order and notify the State Treasurer, by letter, of the issuance of such order. After the expiration of seven working days from the issuance of such order, if in the meantime such outstanding warrant has not been presented for payment, the Director of Administrative Services shall have authority to issue a duplicate thereof, numbered the same as the original, with the word duplicate written or printed in red ink across the face thereof. In an emergency, the Director of Administrative Services may immediately issue such duplicate warrant.
We believe that § 77-2215 serves as authority for the Retirement Board for stop payment of any outstanding warrants and the statutory process is appropriately used for any valid purpose. It is not necessary that standards which guide administrative agencies be embodied in one statute, but may be found in others. See In re Application U-2, 226 Neb. 594,413 N.W.2d 290 (1987). Thus, the provisions of § 77-2215 serve to provide a statutorily authorized mechanism which may be used by the Retirement Board to cancel or stop payment on state warrants.
The suspension of benefit payments (stop payment) only upon the information that warrants issued to beneficiaries have not been cashed for a period of several months seems to us to be a reasonable business practice in keeping with the fiduciary responsibilities of the Retirement Board. Members of the Board have fiduciary duties to administer the retirement systems for the exclusive use and benefit of members and their beneficiaries. Neb. Rev. Stat. § 1503.02 (Cum. Supp. 1996) states:
 (1) The appointed members of the Public Employees Retirement Board shall have the responsibility for the administration of the retirement systems pursuant to subdivision (1)(a) of section 84-1503, shall be deemed fiduciaries with respect to the administration of the retirement systems, and shall be held to the standard of conduct of a fiduciary specified in subsection (2) of this section. The nonvoting, ex officio member of the board shall not be deemed a fiduciary.
 (2) As fiduciaries, the appointed members of the board shall discharge their duties with respect to the retirement systems solely in the interests of the members and beneficiaries of the retirement systems for the exclusive purposes of providing benefits to members and members' beneficiaries and defraying reasonable expenses incurred within the limitations and according to the powers, duties, and purposes prescribed by law. The appointed members of the board shall act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.
(Emphasis added.)
Consistent with the statutory requirements, our Nebraska Supreme Court, in Karpf v. Karpf, 240 Neb. 302, 481 N.W.2d 891
(1992), has held that a trustee owes the beneficiary an equitable obligation to keep or use the assets of the trust for the exclusive benefit of the beneficiary. And, every violation by a trustee of a duty required of him by law, whether wilful or fraudulent, or done through negligence, or arising from mere oversight or forgetfulness, is a breach of trust. See Rettingerv. Pierpont, 145 Neb. 161, 15 N.W.2d 393 (1944); Whaley v.Matthews, 134 Neb. 875, 280 N.W. 159 (1938). Consequently, it is the duty of the Retirement Board to administer the retirement systems entrusted to its care in a manner that all funds and monies are used exclusively for providing benefits to members and members' beneficiaries.
We note that any warrants that are not negotiated within one year after their issuance cease to be an obligation of the State of Nebraska and are to be charged off upon the books by the State Treasurer under the provisions of Neb. Rev. Stat. § 77-2205
(1996). This statute also provides that, "[e]xcept as otherwise provided by law, the amount stated on such warrant shall be credited to the General Fund." Of course, the law requires that any funds or monies of the retirement systems are to be used exclusively for providing members' benefits. Accordingly, amounts from uncashed warrants issued to pay retirement benefits are not properly credited to the General Fund.
 II. IF THE AUTHORITY TO CANCEL WARRANTS EXISTS, DOES THE CREDITING OF THE FUNDS TO THE RETIREMENT FUNDS VIOLATE THE EXCLUSIVE BENEFIT RULES AND THE MINIMUM DISTRIBUTION RULES IMPOSED UPON QUALIFIED RETIREMENT PLANS BY INTERNAL REVENUE CODE SECTIONS 401(a)(2) AND 401(a)(9)? THESE RULES GENERALLY PROHIBIT REVERSION OF PLAN ASSETS TO THE EMPLOYER UNTIL ALL PLAN LIABILITIES HAVE BEEN SATISFIED, PROHIBIT THE DIVERSION OF PLAN ASSETS TO PURPOSES OTHER THAN THE EXCLUSIVE BENEFIT OF PLAN MEMBERS AND BENEFICIARIES, AND REQUIRE THAT A MEMBER'S INTEREST IN THE PLAN BE DISTRIBUTED TO THE MEMBER AND THE MEMBER'S BENEFICIARY OVER THE LIFE OR LIFE EXPECTANCY OF THE MEMBER AND THE MEMBER'S DESIGNATED BENEFICIARY.
Cancellation or stop payment of warrants and crediting these amounts to retirement funds is consistent with and in furtherance of Internal Revenue Code provisions relating to plan qualification requirements.
Initially, we point out that the provisions of26 U.S.C.A. § 401(a) of the Internal Revenue code are applicable to the Public Employees Retirement Systems because the retirement plans administered by the Retirement Board are governmental plans as that term is defined in 26 U.S.C.A. § 414(d). As such, Internal Revenue Code requirements must be adhered to in order to maintain the "qualified" status of the retirement plans. See Foilv. C.I.R., 920 F.2d 1196 (5th Cir. 1990), Howell v. UnitedStates, 775 F.2d 887 (7th Cir. 1985). (Addressing the issue whether certain governmental plans are "qualified" plans under the Internal Revenue Code).
Section 401 in material part states:
 (a) Requirements for qualification. A trust created or organized in the United States and performing part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employee or their beneficiaries shall constitute a qualified trust under this section —
 (2) if under the trust instrument it is impossible, at any
time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than the exclusive benefit of his employees or their beneficiaries . . .
(Emphasis added).
The suspension of benefit payments or the stop payment of warrants are not actions that would in some fashion violate the exclusive benefit requirements of § 401(a). Rather, these actions would assure that benefit payments would be used only for their intended purposes and that benefit amounts would not be used for any purpose other than the exclusive benefit of employees and beneficiaries.
As we understand, benefit payments would not be suspended nor payment stopped unless it were determined that warrants issued are outstanding after a certain period of time. Amounts from cancelled warrants would be credited to retirement funds rather than the General Fund. These actions would be consistent in every respect with IRC requirements since benefit amounts would be paid as provided for once the reasons for not negotiating the warrants were determined. Obviously, a warrant may not be negotiated for any number of reasons, i.e., oversight, lost in the mail, change of residence, etc. We believe that suspension of benefit amounts and the stop payment of outstanding warrants would serve to comply with the "exclusive benefit" requirements since retirement amounts, would be used only for purposes of the funding and payment of employee benefits.
Similarly, the "required distribution" provisions of § 401(a)(9) would not be offended by administrative practices suspending payment of benefit amounts if warrants were outstanding for a certain time period. We necessarily assume that eligible amounts would be paid or remitted to the beneficiaries upon learning of the reasons for the outstanding warrants. Suspension of benefit amounts or the stop payment of warrants until information is obtained as to the beneficiary's status would assure that retirement funds are being used only for the benefit of plan members and their beneficiaries. As the courts have noted, § 401(a) requires that plan documents definitely and affirmatively make it impossible for funds to be used for any purpose outside the retirement plan. See Pension Benefit GuarantyCorporation v. Artra Group, Inc., 972 F.2d 771 (7th Cir. 1992). Of course, plan provisions of the retirement systems administered by the Retirement Board are reposed in statute. As we have noted above, the members of the Retirement Board have the fiduciary obligation to administer the retirement systems for the exclusive use and benefit of members and beneficiaries under the provisions of § 84-1503.02 and the distribution provisions of the individual retirement acts establishing the retirement systems.
 III. IN THE ALTERNATIVE, IF THE AUTHORITY TO CANCEL WARRANTS DOES NOT EXIST, DOES THE CREDITING OF FUNDS TO THE GENERAL FUND VIOLATE THE EXCLUSIVE BENEFIT RULES AND THE MINIMUM DISTRIBUTION RULES IMPOSED UPON QUALIFIED PLANS BY INTERNAL REVENUE CODE SECTIONS 401(A)(Z) AND 401(A)(9)?
We have concluded above that the Retirement Board possesses general and specific authority for cancelling or stopping payment of warrants prior to one year of their issuance. And, it is our view that the crediting of funds to the General Fund would be contrary to Nebraska law and also violative of the "exclusive benefit" rules of the Internal Revenue Code. Amounts of warrants cancelled after one year may not be credited to the General Fund if otherwise provided by law under the provisions of §77-2205. We have previously pointed out that § 84-1503.02
requires that the retirement systems be administered exclusively for the use and benefit of employees and their beneficiaries. Crediting amounts to retirement funds fulfills § 401(a) qualification requirements and precludes the possibility that retirement fund amounts may be utilized for any purpose other than the exclusive benefit of retired employees and their beneficiaries.
 CONCLUSION
It is our opinion that the Nebraska Public Employees Retirement Board has the authority and the duty to suspend retirement benefits for any valid reason. Further, information that warrants issued for benefit payments are outstanding constitutes a valid basis for stop payment of the outstanding warrants. State and federal statutes mandate that retirement funds be used for the exclusive benefit of retired members and their beneficiaries. The administrative practice of suspending payments and cancelling outstanding warrants recommended by the Auditor of Public Accounts would assure compliance with statutory requirements in keeping with the fiduciary duties of the Retirement Board.
Sincerely,
 DON STENBERG Attorney General
 Fredrick F. Neid Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General
[1] The Public Employees Retirement Systems administers the State Employees Retirement System, the Nebraska State Patrol Retirement System, the Nebraska Judges Retirement System, the School Retirement System of the State of Nebraska, and the Retirement System for Nebraska Counties. Each of the retirement systems are established by a separate legislative act.