In re Estate of Edward J. Stuchlik, Jr., deceased, and In re Trust Created by Edward J. Stuchlik, Jr., deceased. John E. Stuchlik, appellant, v. Margaret Stuchlik, Personal Representative and Cotrustee, and Kenneth Stuchlik, Cotrustee, appellees.

___ N.W.2d ___

Filed December 12, 2014.    No. S-13-1118.

1. **Decedents' Estates: Appeal and Error.** In reviewing a judgment of the probate court in a law action, the Supreme Court does not reweigh evidence, but considers evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

2. **____: ____.** The probate court's factual findings have the effect of a verdict, and an appellate court cannot set those findings aside unless they are clearly erroneous.

3. **Judgments: Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

4. **Fraud: Judgments.** The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide.

5. **Wills: Contracts.** Oral testimony as to a contract for wills is allowed only where the will itself references the contract.

6. **Decedents' Estates: Wills: Contracts: Breach of Contract.** The effect of a valid contract for wills is not to create a cause of action against the decedent's estate, but instead is to create a cause of action for breach of contract.

7. **Wills: Contracts.** Even where a valid contractual will exists, that existence does not make the surviving party's will irrevocable.

8. **Decedents' Estates: Wills: Contracts: Breach of Contract.** If a surviving party revokes or breaches a mutual contractual will, an action lies for a breach of contract against the estate of the survivor.

9. **Decedents' Estates: Jurisdiction.** County courts have exclusive jurisdiction over all matters relating to decedents' estates, including the probate of wills and construction thereof.

10. **Decedents' Estates: Jurisdiction: Equity.** In exercising exclusive original jurisdiction over estates, county courts may apply equitable principles to matters within probate jurisdiction.

11. **Decedents' Estates: Jurisdiction: Wills: Trusts: Minors: Mental Competency.** County courts have jurisdiction over all subject matter relating to estates of decedents, including construction of wills and determination of heirs and successors of decedents, estates of protected persons, protection of minors and incapacitated persons, and trusts.

12. **Courts: Jurisdiction.** County courts have full power to make orders, judgments, and decrees and to take all other actions necessary and proper to administer justice in the matters which come before them.

13. **Trusts: Property.** A trust creates a fiduciary relationship in which one person holds a property interest subject to an equitable obligation to keep or use that interest for the benefit of another.

14. **Trusts.** Trustees owe the beneficiaries of a trust duties that include loyalty, impartiality, prudent administration, protection of trust property, proper record-keeping, and informing and reporting.

15. ____. The duty of loyalty requires a trustee to administer the trust solely in the interests of the beneficiaries.

16. ____. In exercising powers of control over interests in an enterprise held by a trust, a trustee shall act in the best interests of the trust beneficiaries.

17. ____. If a trust has two or more or more beneficiaries, a trustee has a duty of impartiality among beneficiaries.

18. **Trusts: Words and Phrases.** Impartiality means that a trustee's treatment of beneficiaries or conduct in administering a trust is not to be influenced by the trustee's personal favoritism or animosity toward individual beneficiaries.

19. **Trusts: Conflict of Interest.** A cause for removal is appropriate for the best interests of the trust estate where hostile relations exist between a trustee and beneficiaries of such a nature as to interfere with proper execution of the trust, particularly where it appears that the trustee's personal interests conflict with, or are antagonistic to, his or her duties as trustee under the terms of the trust.

20. ____: ____. When an entity is held by a trust, and particularly where a controlling share of that entity is exercised against the best interests of any trust beneficiary, it is a breach of the duty of loyalty.

21. **Trusts: Attorney Fees: Costs.** Attorney fees and expenses will ordinarily be allowed to a trustee where they were incurred for the benefit of the estate.

22. ____: ____: ____. If a fiduciary's defense of his or her acts if fully successful, he or she is entitled to recover the reasonable costs necessarily incurred in preparing his or her final account and in successfully defending it against objections.

23. ____: ____: ____. A fiduciary's defense must be only substantially successful, not 100 percent successful, in order for the fiduciary to be entitled to recover costs and attorney fees.

24. **Courts: Trusts: Attorney Fees: Costs: Appeal and Error.** The county court or district court on appeal has discretionary power and authority to order payment out of the trust estate for costs of litigation and, in proper cases, to order payment of reasonable fees to attorneys for services rendered to a trustee in good faith.

Appeal from the County Court for Saunders County: Patrick R. McDermott, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Paul R. Elofson, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellant.

Richard L. Rice and Andrew C. Pease, of Crosby Guenzel, L.L.P., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## I. NATURE OF CASE

This matter involves petitions filed by John E. Stuchlik seeking removal of the personal representative of the Edward J. Stuchlik, Jr., estate and removal of the cotrustees of the Edward J. Stuchlik, Jr., Family Trust. The personal representative and one of the cotrustees is John's mother and the spouse of the decedent. The other cotrustee is John's brother. The probate dispute involves assets held in a testamentary trust established by the last will and testament of the decedent.

## II. BACKGROUND

On March 22, 2012, Edward J. Stuchlik, Jr. (Stuchlik), died testate. He was survived by his wife, Margaret L. Stuchlik, and his five children, John, Edward J. Stuchlik II, LeAnne M. Bullock, Linda M. Voboril, and Kenneth G. Stuchlik. This action is by John against Margaret as both personal representative and cotrustee and Kenneth as cotrustee. John filed a petition in the probate proceedings to remove Margaret as personal representative. John also asked for trust administration and to have Margaret and Kenneth removed as cotrustees. Among other things, John alleged that Margaret was managing trust assets against the will of Stuchlik and harming John's interests as a beneficiary. John asked the court to appoint him as personal representative and trustee in their place.

### 1. Real Estate and Partnership

Before Stuchlik's death, Stuchlik and Margaret formed a limited partnership in the name of Stuchlik Farms Ltd. in the course of their tax and estate planning. They conveyed into the partnership all of the farm real estate that they owned.

Originally, Stuchlik and Margaret were the general partners and owners of 100 percent of the general partnership interests. Eventually, Stuchlik and Margaret gifted equal limited partnership interests to John, Edward, and Kenneth. Currently, the partnership is owned 22.1888 percent by John as a limited

partner. Edward and Kenneth each also own a 22.1888-percent limited partnership interest in his own name. Margaret holds a 16.7168-percent limited partnership interest and a 1-percent general partnership interest in her own name. Margaret and Kenneth hold a 16.7168-percent interest as cotrustees of the family trust, including the 1-percent general partnership interest originally held by Stuchlik. The farm real estate is the only asset held by the partnership.

## 2. Stuchlik Family and Family Trust

Stuchlik left a will executed on February 8, 2011. Stuchlik's will provided that, aside from certain personal items that were bequeathed to Margaret, all assets were to be transferred to the family trust. The terms of the trust stated that the income and assets were to be expended as needed to support Margaret during her lifetime and that, upon her death, the assets were to be distributed according to certain provisions.

The provisions of the trust are set forth in the fifth article of Stuchlik's will. The terms state:

Upon the death of my spouse . . . the trustee shall distribute all of my estate and trust estate as follows:

1) [personal property items to be designated according to safe deposit box list].

2) . . . trucks, pickups or machinery and grain shall be sold and the proceeds thereof divided equally to [Kenneth, John, and Edward], share and share alike.

3) I acknowledge that a portion or all of my farm real estate may be titled in Stuchlik Farms, Ltd. . . . but it is my desire and request that my sons as a condition of their inheritance, exchange deeds so as to divide my farm real estate [such that each of the sons would receive a specified parcel or parcels of farm real estate.]

. . . .

(h) I devise all the rest, residue and remainder of my estate and trust estate to [Kenneth, John, and Edward], share and share alike.

The parcel specifically set aside for John included the "home place." John and his family have lived at the home place

sporadically for over 20 years, with some absences while John was working out of state.

Margaret was named as personal representative of the estate, and Margaret and Kenneth were named cotrustees of the family trust.

Margaret stated in an affidavit to the court that all estate assets were moved into the family trust, and this evidence was corroborated by her attorney at oral argument. Thus, the estate is ready to be closed.

### 3. Alleged Contract for Wills or Oral Trust

John argues that there was either a contract for wills or an oral trust between Margaret and Stuchlik. He asserts as evidence the language of the will indicating Stuchlik's "desire and request that my sons[,] as a condition of their inheritance, exchange deeds so as to divide my farm real estate as follows."

As further evidence of the contract for wills or an oral trust, John produced a document handwritten by Margaret to the couple's attorney, Curtis Bromm. The letter states that "[i]n case of our death Dad & I want the land and our possessions divided this way," and it then devises part of their land to John. The letter was signed by both Margaret and Stuchlik on March 1, 2009.

At a deposition on July 15, 2013, Margaret engaged in the following dialog with counsel:

[Q:] Did you and [Stuchlik] sit down and talk about how . . . you're going to make distribution of your estate?

[A]: It's in the will.

[Q:] And you discussed it, and then you — either with . . . Bromm or in his presence and discussed that issue or with — you went to . . . Bromm and told him what you wanted to do; is that correct?

[A]: That's what [Stuchlik] did.

[Q]: All right. And were you present?

[A]: I was present.

[Q:] And so . . . Bromm drafted a will consistent with your husband's wishes and understandings, and he drafted

a will that was consistent with your wishes and under-standings. And those two wills, based upon what you've shared with me, were based upon an agreement between you and [Stuchlik] about how your joint assets would be conveyed; is that correct?

[A]: Yes.

. . . .

[Q:] So do I understand that your will and [Stuchlik's] will as of February 2011 were identical in terms of how they transferred property?

[A]: Explain "identical."

[Q:] Other than the name changes, the dispositive pro-visions about how property was to be dissolved, distrib-uted, they were identical in format; is that correct?

[A]: Yes.

Margaret later testified at trial that she did not make any contract for wills with Stuchlik.

At trial, Bromm was also called as a witness. The court allowed John's counsel to inquire into the making of Stuchlik's will, but only to the extent that Bromm felt he was within his ethical boundaries. The court stated, "I think it's going to have to be done kind of question by question because some questions may not be ones that I would feel interfere with the attorney-client privilege with [Margaret] and there will be some that may very directly bear on her privilege with . . . Bromm." Eventually, John's counsel asked the court to review Bromm's file on the Stuchliks. The court declined to review the case file in camera. The court allowed in evidence only the letter from Margaret and Stuchlik containing directives for their will.

### 4. Activities of Cotrustees

After Stuchlik's death, Margaret conveyed the home place owned by the partnership to Edward, Voboril, and Kenneth as tenants in common, subject to a life estate granted to Margaret. As the warranty deed states, "[Margaret], a single person, Grantor, in consideration of One Dollar ($1.00) and other good and valuable consideration, conveys to Grantees, [Edward, Voboril, and Kenneth], as tenants-in-common, an undivided

one-half interest in and to the following described real estate . . . ." The warranty deed then purports to convey the home place from Margaret to Edward, Voboril, and Kenneth.

In January 2013, Margaret, Kenneth, and Edward entered the home place premises without the consent of John. They were accompanied by a county sheriff's deputy who testified that he did so "through a civil standby that [he] was requested to do sometime at the beginning of this year." The county sheriff's deputy testified that he was directed by the sheriff to accompany Margaret and her two children "to make sure that there's no sort of altercation between the two parties." Margaret, Kenneth, and Edward entered the residence and changed the locks. A propane tank was removed from the home place residence, which caused the home to go without heat for several days and subsequently caused damage from frozen pipes. Since the retaking of the home place, Margaret, Kenneth, and Edward have indicated to John that they intend to demolish the residence. John alleges that Margaret's and Kenneth's treatment of his personal property in the residence constituted a conversion.

It is alleged that the partnership entered into leases with members of the family that were below fair market value. John alleges the leases are below fair market value because they are 10-year crop share leases, and he believes Margaret's life expectancy is less than 10 years. Therefore, it would result in John's share being burdened by the lease. However, the evidentiary rulings of the county court limited the record in regard to these allegations.

### 5. COUNTY COURT PROCEEDINGS

In this action, John filed a petition in the probate proceedings to remove Margaret as a personal representative. John also asked for trust administration and to have Margaret and Kenneth removed as cotrustees. John asked the court to appoint him as personal representative and trustee in their place.

The matters were heard in August 2013, and on September 13, the county court entered an order on John's petitions. The court stated that there were three main issues it needed

to resolve: (1) the extent of its jurisdiction in this matter; (2) whether there was a contract for wills between Margaret and Edward and, if so, whether it had any bearing on this proceeding; and (3) whether the actions of which John complained were taken by Margaret and/or Kenneth in their capacities as personal representative and cotrustees.

### (a) County Court Jurisdiction

The court concluded that its jurisdiction extended only to matters related to the property of the estate and to the corpus of the family trust and that any claim related to the operation and assets of the limited partnership (including all of the real estate involved) was outside of the court's probate jurisdiction. The court emphasized that issues pertaining to the home place were related to the partnership, and not to Stuchlik's estate, and that therefore, any claim relating to John's ouster from the home place was outside of the county court's limited jurisdiction.

The argument over the scope of the court's jurisdiction in the matter led to discovery disputes between the two parties. Midway through the proceedings, the disputes led the court to issue an order limiting the scope of discovery to "discovery relevant to administration of the estate of the decedent and to property of the estate." Even after the discovery order, John continued to solicit evidence along the lines of his broader view of the court's jurisdiction. He was allowed several times to make offers of proof. The court ruled again during trial:

> We are not going into any more about the partnership. I think the ouster of [John] was a partnership action. They removed him from partnership property. I can't fix that as a probate judge. And I have — I've been ruling that way since the first protective order in discovery that I put out. And that's my ruling. It's not probate property.

### (b) Existence of Contract
### for Wills

The court concluded that there was insufficient evidence of a contract for wills between Margaret and Stuchlik and,

instead, found the estate plan consistent with a mutual will arrangement.

### (c) Fiduciary Duties With Respect to Estate Property

The court found that actions taken by Margaret and Kenneth in their capacities as personal representative and cotrustees did not show evidence of mismanagement under the statutory definition. The court therefore dismissed John's petition to remove Margaret as personal representative. With respect to the family trust, the court granted the request for trust administration, but only to the extent that the court granted registration of the family trust, and denied all other relief, including the request to remove the cotrustees.

### (d) Posttrial Motions and Orders

John moved for a new trial at the end of the proceedings. Both parties moved for attorney fees. John's motion for a new trial was denied. Margaret and Kenneth were awarded attorney fees.

## III. ASSIGNMENTS OF ERROR

John's assignments of error, consolidated and restated, are the following: (1) failing to find that a contract for wills existed between Margaret and Stuchlik; (2) failing to admit evidence and allow discovery which could have led the court to find that a contract for wills existed; (3) finding that the county court lacked jurisdiction over matters pertaining to the farm real estate held by the partnership, reasoning that Margaret's activities as general partner had no bearing on her fitness as a personal representative and cotrustee of the family trust; (4) failing to find that Margaret's and Kenneth's activities warranted removal as personal representative and cotrustees; (5) failing to award John his attorney fees and costs, and awarding Margaret and Kenneth attorney fees to be paid from the estate; and (6) overruling John's motion for a new trial.

## IV. STANDARD OF REVIEW

[1,2] In reviewing a judgment of the probate court in a law action, the Supreme Court does not reweigh evidence,

but considers evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[1] The probate court's factual findings have the effect of a verdict, and an appellate court cannot set those findings aside unless they are clearly erroneous.[2]

[3,4] However, on a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[3] The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide.[4]

## V. ANALYSIS

As will be explained in more detail below, we affirm in most respects, but reverse, and remand for the limited purpose of reviewing Margaret's and Kenneth's activities in regard to the partnership as evidence of any potential breach of fiduciary duties as cotrustees.

Margaret has already completed her duties as personal representative and is waiting to be discharged pending the result of this action. Therefore, any action for her removal as personal representative is without merit.

With regard to John's petition to remove Margaret and Kenneth as cotrustees, much of John's argument is based on a theory of a contract for wills or an oral trust between Margaret and Stuchlik. We find these arguments wholly irrelevant to the petition to remove a cotrustee. An action to remove cotrustees of a trust must center on any serious breaches by the cotrustees.[5] Therefore, the emphasis on the real estate and partnership property is misplaced.

---

[1] See *In re Estate of Lamplaugh*, 270 Neb. 941, 708 N.W.2d 645 (2006).

[2] See *id*.

[3] *Id*.

[4] *Gonzalez v. Union Pacific RR. Co*., 282 Neb. 47, 803 N.W.2d 424 (2011).

[5] See Neb. Rev. Stat. § 30-3862 (Reissue 2008).

However, to the extent Margaret's and Kenneth's activities as general partners of the partnership relate to their fitness as cotrustees, the court erred in concluding that it lacked jurisdiction to consider any evidence pertaining to those allegations. We remand the cause for a determination of whether the partnership activities related back to their fiduciary duties as cotrustees.

## 1. Removal as Personal Representative

The county court was correct in its finding that Margaret had not breached any of her duties as personal representative, because her duties in that capacity were completed when the estate property was transferred into the family trust. All estate assets are now in the family trust. The estate's closure is awaiting the end of this action. Accordingly, the only issue left is Margaret's and Kenneth's actions as cotrustees of the family trust.

## 2. Removal as Cotrustees

Removal of a cotrustee is proper under § 30-3862 where (1) the trustee has committed a serious breach of trust; (2) the trustee fails to cooperate among fellow cotrustees; (3) the trustee is unfit, unwilling, or persistently fails to administer the trust effectively, and the court determines that removal would best serve the interests of the beneficiaries; and (4) there has been a substantial change in circumstances or removal is requested by all of the qualified beneficiaries and the court finds removal would best serve these interests. John alleges that Margaret should be removed as cotrustee for failing to abide by a contract for wills or an oral trust between herself and Stuchlik. This cannot be the case, because a failure to abide by a contract for wills or an oral trust is not a basis for removing a cotrustee under this removal statute. However, evidence of Margaret's and Kenneth's activities as general partners of the partnership may be relevant to determine whether there is a basis for their removal as cotrustees under this statute.

### (a) Contract for Wills
### or Oral Trust

#### (i) Contract for Wills

The county court was correct in finding that there was not enough evidence to support a contract for wills and that even if there was, such a contract was not relevant to this action. John argues that Margaret had entered into a contract for wills with Stuchlik before his death and that the two had contracted to equally divide the trust between their three sons. However, there is no evidence of such a contract. Further, the proper case for a breach of a contract for wills is not a probate action against the decedent's estate, but, rather, is an action for breach of contract or an action against the breaching party's estate. Therefore, a contract for wills is wholly irrelevant to this action to remove cotrustees.

[5] In Nebraska, a contract for wills "can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract."[6] "The execution of a joint will or mutual wills *does not create a presumption* of a contract not to revoke the will or wills."[7] The comments to the Uniform Trust Code, as adopted by Nebraska, allow oral testimony only if the will references the contract.[8]

The county court found that the evidence of a letter from Margaret and Stuchlik directing Bromm on the division of the estate was merely the evidence of an intent to have mutual wills, and not an agreement to will. The court correctly found that the language in the will did not raise a presumption of a contract for wills. We agree.

[6-8] Even if such a contract for wills existed, the proper action for enforcement would not be a probate action for removal of a cotrustee. The effect of a valid contract for wills

---

[6] Neb. Rev. Stat. § 30-2351 (Reissue 2008).

[7] *Id*. (emphasis supplied).

[8] See *Johnson v. Anderson*, 278 Neb. 500, 771 N.W.2d 565 (2009).

is not to create a cause of action against the decedent's estate, but instead is to create a cause of action for breach of contract.[9] In *Pruss v. Pruss*,[10] beneficiaries filed an action seeking relief that would compel the distribution of a wife's estate under the terms of a mutual contractual will, rather than under a subsequent will executed after the death of the husband. There, we held that even where a valid contractual will existed, that existence did not make a will irrevocable. Wills by their nature are ambulatory and may be revoked at any time.[11] Instead, if the surviving spouse revokes or breaches the mutual contractual will, an action may lie for breach of contract *against the estate of the survivor*.[12] Therefore, in the present case, the cause of action was improperly brought as an action for the removal of the personal representative and cotrustees, and instead should have been brought as a breach of contract action against Margaret, as the surviving spouse, by the supposed beneficiaries.

### (ii) Oral Trust

John asks this court to find, as an alternative to the contract for wills, that an oral trust had been established through the evidence at trial. Neb. Rev. Stat. § 30-3833 (Reissue 2008) states that "a trust need not be evidenced by a trust instrument, but the creation of an oral trust and its terms . . . may be established only by clear and convincing evidence."

The county court found that there was no evidence of such an oral trust. Given our standard of review in these proceedings, we must give weight to the court's evidentiary findings. We do not reweigh evidence, but consider evidence in the light most favorable to the successful party and resolve evidentiary conflicts in favor of the successful party.[13] We find no clear error in the county court's finding.

---

[9] *Pruss v. Pruss*, 245 Neb. 521, 514 N.W.2d 335 (1994).

[10] *Id.*

[11] See *id.*

[12] See *id.*

[13] *In re Estate of Lamplaugh, supra* note 1.

Because we find that the county court was correct in finding that there was no contract for wills or an oral trust, and because an existence of such a contract would be irrelevant to the removal of a trustee, we find no merit to John's arguments that the court erred in not allowing discovery on the matter, erred in granting attorney-client privilege, or erred in failing to review Bromm's testimony in camera for relevancy.

### (b) Jurisdiction Over Partnership Actions

Finally, John asserts that the court erred in failing to find that Margaret's conduct as a general partner warranted her removal as cotrustee. The county court concluded that it could not base Margaret's removal on any conduct pertaining to the partnership. The court reasoned that it lacked jurisdiction over matters to do with the partnership and the real estate held by the partnership. However, 16.7168 percent of the partnership, including a 1-percent general partnership interest, is held in the family trust. To the extent that the cotrustees' activities toward this partnership are relevant to their fitness as cotrustees, the court erred in concluding it lacked jurisdiction. Therefore, the court erred in denying discovery and in refusing to consider whether partnership actions reflected on the propriety of Margaret and Kenneth as cotrustees of the family trust.

[9-12] Neb. Rev. Stat. § 24-517(1) (Cum. Supp. 2012) states that the county court shall have exclusive jurisdiction over all matters relating to decedents' estates, including the probate of wills and construction thereof. In exercising exclusive original jurisdiction over estates, county courts may apply equitable principles to matters within probate jurisdiction.[14] We have held that county courts have jurisdiction over all subject matter relating to estates of decedents, including construction of wills and determination of heirs and successors of decedents, estates of protected persons, protection of minors and incapacitated persons, *and trusts*.[15] Such courts have full power to make

---

[14]  Neb. Rev. Stat. § 30-2211 (Cum. Supp. 2014).

[15]  See, *id*.; *In re Estate of Layton*, 207 Neb. 646, 300 N.W.2d 802 (1981).

orders, judgments, and decrees and to take all other actions necessary and proper to administer justice in the matters which come before them.[16]

The county court here reasoned that "[m]erely because the matter raised relates in some manner to an estate or a trust does not turn the county court into a court of general equitable jurisdiction as [the partnership] is the exclusively [sic] purview of the district court." The court was correct to decline adjudication of partnership disputes. A probate action is not the proper forum for resolving issues concerning any possible conversion or disputes regarding the real estate. But, John is asking for Margaret and Kenneth to be removed as cotrustees of the family trust due to a breach of their fiduciary duties. That trust holds over 16 percent of the partnership, as well as a general partnership interest. The 1-percent general partnership interest held by the family trust, with Margaret and Kenneth as cotrustees, combined with Margaret's personal 1-percent general partnership interest, effectively gives Margaret 100 percent of the general partnership power.

Assuming John's allegations are true, under Nebraska's common definitions of a trustee's fiduciary duties, Margaret and Kenneth may have breached fiduciary duties to John as a beneficiary of the trust through their management of the partnership. In particular, John argues that the cotrustees are engaged in self-dealing, actions of personal animus and friction that interfered with the proper administration of the estate and trust, and failing to abide by the terms of the trust. If so, actions taken with regard to the real estate (held by the partnership) may be relevant evidence of a breach of fiduciary duties.

[13,14] A trust creates a fiduciary relationship in which one person holds a property interest subject to an equitable obligation to keep or use that interest for the benefit of another.[17] A trustee has the duty to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with the Nebraska Uniform

---

[16] *Id.*

[17] *Karpf v. Karpf*, 240 Neb. 302, 481 N.W.2d 891 (1992).

Trust Code."[18] The Nebraska Uniform Trust Code, in turn, states that trustees owe the beneficiaries of a trust duties that include loyalty, impartiality, prudent administration, protection of trust property, proper recordkeeping, and informing and reporting.[19]

[15,16] The duty of loyalty requires a trustee to administer the trust solely in the interests of the beneficiaries.[20] As § 30-3867(c) states, "A sale, encumbrance, or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with . . . (2) the trustee's descendants, siblings, parents, or their spouses." Further, the statute states, "A transaction not concerning trust property in which the trustee engages in the trustee's individual capacity involves a conflict between personal and fiduciary interests if the transaction concerns an opportunity properly belonging to the trust."[21] Particularly pertinent is the following section of the duty of loyalty statute:

> In voting shares of stock or in exercising powers of control over similar interests in other forms of enterprise, *the trustee shall act in the best interests of the beneficiaries*. If the trust is the sole owner of a corporation or other form of enterprise, the trustee shall elect or appoint directors or other managers who will manage the corporation or enterprise *in the best interests of the beneficiaries*.[22]

Nebraska's statutes are derived from the Restatement (Third) of Trusts.[23] The comments in the Restatement state that the policy behind this law is to prevent trustees' placing themselves in positions in which they may be tempted to act for

---

[18] Neb. Rev. Stat. § 30-3866 (Reissue 2008).

[19] See Neb. Rev. Stat. §§ 30-3866 through 30-3870 (Reissue 2008). See, also, *In re Estate of Robb*, 21 Neb. App. 429, 839 N.W.2d 368 (2013).

[20] § 30-3867(a).

[21] § 30-3867(d).

[22] § 30-3867(f) (emphasis supplied).

[23] Restatement (Third) of Trusts (2007).

reasons other than the best interests of the beneficiaries.[24] "This policy of strict prohibition also provides a reasonable circumstantial assurance . . . that beneficiaries will not be deprived of a trustee's disinterested and objective judgment."[25]

[17-19] If a trust has two or more beneficiaries, a trustee has a duty of impartiality among beneficiaries.[26] This includes a duty to "act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."[27] Comments in the Restatement suggest that the duty of impartiality includes a duty to conform to the settlor's intentions and the terms of the trust instrument.

> It is not only appropriate but required by the duty of impartiality that *a trustee's treatment of beneficiaries, and the balancing of their competing interests, reasonably reflect any preferences and priorities that are discernible from the terms . . . , purposes, and circumstances of the trust and from the nature and terms of the beneficial interests*. Thus, unfortunately, *it is often the case* that the implications of the duty of impartiality are complicated by the difficulties of determining, and the vagueness of, some *relevant aspects of the settlor's intentions and objectives*—much of which is left to interpretation and inference.[28]

Impartiality means that a trustee's treatment of beneficiaries or conduct in administering a trust is not to be influenced by the trustee's personal favoritism or animosity toward individual beneficiaries.[29] As we have held:

> "A court of equity has power and authority to remove a trustee from his office, when any substantial personal disability exists in the trustee, when he fails to perform the duties of his position, when he has misconducted

---

[24] See *id*., § 78.

[25] *Id*., comment *b*. at 96.

[26] § 30-3868.

[27] *Id*.

[28] Restatement, *supra* note 23, § 79 at 129 (emphasis supplied).

[29] *Id*.

himself in office, *when hostile relations exist between the trustee and his beneficiaries of such a nature as to interfere with the proper execution of the trust*, or under any other conditions which render his removal necessary for the best interests of the trust estate, *particularly where it appears that the trustee's personal interests conflict with, or are antagonistic to, his duties as trustee under the terms of his trust*."[30]

[20] Nebraska law states that when an entity is held by a trust, and particularly where a controlling share of that entity is exercised against the best interests of any trust beneficiary, it is a breach of the duty of loyalty.[31] That is exactly what is purported to have happened in this case. Margaret and Kenneth control the partnership through the general partnership interest held in the family trust. The partnership interest is the largest holding of the family trust. Though Margaret has a lifetime interest, her children have equal interests in the remainder. John alleges that the cotrustees are acting adversely to his interests as a beneficiary. He alleges that through Margaret's actions as a general partner, she has caused assets of the partnership to be sold or leased at below market value, presumably causing the partnership interest held by the family trust to decrease in value. We do not know if these allegations have any truth, but the court had jurisdiction to consider these allegations and any evidence relevant thereto. It is conceivable that an examination into the actions of the partnership may have revealed evidence that Margaret and Kenneth were violating their duty of loyalty and against self-dealing.

Further, Nebraska law states that a trustee must act impartially between two or more beneficiaries.[32] It violates a trustee's duty of impartiality to administer a trust with personal favoritism or animosity toward a beneficiary.[33] Through the general partnership held in trust, Margaret and Kenneth have

---

[30] *Reed v. Ringsby*, 156 Neb. 33, 39-40, 54 N.W.2d 318, 322 (1952) (emphasis supplied). See, also, § 30-3862.

[31] § 30-3867(f).

[32] § 30-3868.

[33] Restatement, *supra* note 23, § 79.

a management interest in the partnership. It is arguable that they may have managed the partnership in such a way as to treat John's interest in the trust unfairly. Since Margaret and Kenneth have shown John disfavor, it may be relevant to examine the actions of the partnership in order to determine if the cotrustees intended to treat John unfairly in regard to his beneficial trust interest. The actions of Margaret and Kenneth in their capacities as partners may be evidence as to a breach of the duty of impartiality.

In sum, the county court was correct that it is not a proper forum for a partnership action. Most of the issues in this action pertain to the real estate held by the partnership, and for resolution of any of those issues, the county court was correct to decline jurisdiction. However, the county court does have jurisdiction over testamentary trusts and, in this case, the family trust. All parties must bear in mind that any evidence regarding the partnership must pertain to the cause for removal of a cotrustee and any breach of fiduciary duties by Margaret and Kenneth, in their capacities as cotrustees, not in their capacities as general partners. The county court may find that much evidence regarding partnership disputes is not relevant to the action for removal of the cotrustees.

### (c) Attorney Fees

[21-24] Finally, we address the issue of attorney fees. Attorney fees and expenses will ordinarily be allowed to a trustee where they were incurred for the benefit of the estate.[34] We have stated that to make a trustee personally responsible for all reasonably incurred attorney fees for the successful defense of his or her actions as a fiduciary would impose an unconscionable burden on fiduciary service without justification.[35] And, if the fiduciary's defense of his or her acts is fully successful, he or she is entitled to recover the reasonable costs necessarily incurred in preparing his or her final account and in successfully defending it against objections.[36] We have

---

[34] *Rapp v. Rapp*, 252 Neb. 341, 562 N.W.2d 359 (1997).

[35] *Id*.

[36] See *id*.

stated that the standard is "substantially successful" and that the fiduciary's defense does not have to be 100 percent successful in order for the fiduciary to be entitled to recover costs including attorney fees.[37] Similarly, the county court or district court on appeal has discretionary power and authority to order payment out of the trust estate for costs of litigation and, in proper cases, to order payment of reasonable fees to attorneys for services rendered to a trustee in good faith.[38]

Pending the county court's determinations on remand, we leave the issue of attorney fees to be decided pursuant to these rules.

## VI. CONCLUSION

For the foregoing reasons, we find that a contract for wills or an oral trust between Margaret and Stuchlik is irrelevant to an action to remove a personal representative or a cotrustee and that thus, any discovery or evidentiary objections are irrelevant to this ruling. We also find that removal of a personal representative is not proper in this case, because the personal representative properly transferred all estate assets into the family trust pursuant to the will, and that thus, all duties as personal representative have been completed. We affirm the rulings of the county court in these respects. We in part reverse the judgment and remand the cause to the county court in order to determine if any evidence of the cotrustees' actions with regard to the partnership are relevant to their fiduciary duties as cotrustees, potentially warranting removal.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

---

[37] *Id.* at 345, 562 N.W.2d at 362.

[38] See *id.*