Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/13/2017 09:09 AM CST

In re Conservatorship of Marcia G. Abbott,
a protected person.
Cynthia J. Sellon and Russell G. Abbott, appellees and
cross-appellants, v. Mark D. Abbott, Conservator,
appellant and cross-appellee.

In re Abbott Living Trust.
Cynthia J. Sellon and Russell G. Abbott, appellees
and cross-appellants, v. Mark D. Abbott,
Designated Successor Trustee, appellant
and cross-appellee.

___ N.W.2d ___

Filed January 13, 2017.    Nos. S-15-967, S-16-040.

1. **Guardians and Conservators: Appeal and Error.** An appellate court reviews conservatorship proceedings for error appearing on the record in the county court.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Trusts: Equity: Appeal and Error.** Appeals involving the administration of a trust are equity matters and are reviewable in an appellate court de novo on the record.
4. **Attorney Fees: Appeal and Error.** A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion.
5. **Standing: Words and Phrases.** Standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.
6. **Trusts.** Neb. Rev. Stat. § 30-3855 (Reissue 2016) does not dictate who may petition for the removal of a trustee, but, rather, describes to whom fiduciary duties are owed.

7. **Trusts: Standing.** Generally, standing in a trustee removal proceeding is governed by Neb. Rev. Stat. § 30-3862(a) (Reissue 2016).

8. **Trusts.** A serious breach of a fiduciary duty is only one of the grounds for removal of a trustee.

9. **Trusts: Intent.** The extent of the beneficiary's interest in a trust depends upon the discretionary power that the settlor intended to grant the trustee.

10. ____: ____. When the parties do not claim that the terms are unclear or contrary to the settlor's actual intent, the interpretation of a trust's terms is a question of law.

11. **Trusts.** In general, trustees of support trusts have discretion to determine what is needed for the beneficiary's support and to make payments only for that purpose.

12. ____. The discretion afforded to a trustee of a support trust does not preclude a beneficiary from seeking to show that the trustee has abused its discretion in failing to make support payments.

13. **Trusts: Liability.** A trustee is liable for the action of another trustee if he joins in the action, fails to prevent the cotrustee from committing a serious breach of trust, or fails to compel the cotrustee to redress a serious breach of trust.

14. **Trusts.** A trustee has the duty to administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with the Nebraska Uniform Trust Code.

15. ____. The Nebraska Uniform Trust Code states that trustees owe the beneficiaries of a trust duties that include loyalty, impartiality, prudent administration, protection of trust property, proper recordkeeping, and informing and reporting.

16. **Trusts: Conflict of Interest.** A cause for removal of a trustee is appropriate for the best interests of the trust estate where hostile relations exist between a trustee and beneficiaries of such a nature as to interfere with proper execution of the trust, particularly where it appears that the trustee's personal interests conflict with, or are antagonistic to, his or her duties as trustee under the terms of the trust.

17. **Pleadings.** The issues in a given case will be limited to those which are pled.

18. **Rules of the Supreme Court: Pleadings: Notice.** The Nebraska Rules of Pleading in Civil Actions, like the federal rules, have a liberal pleading requirement for both causes of action and affirmative defenses, but the touchstone is whether fair notice was provided.

19. **Trusts: Words and Phrases.** Impartiality means that a trustee's treatment of beneficiaries or conduct in administering a trust is not to be influenced by the trustee's personal favoritism or animosity toward individual beneficiaries.

20. **Trusts.** A finding of one serious breach of fiduciary duty is enough to warrant removal of a trustee.

21. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

22. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.

23. **Judgments: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.

24. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

25. **Final Orders: Appeal and Error.** An order affects a substantial right if the order affects the subject matter of the litigation, such as diminishing a claim or defense that the appellant had before the court entered the order.

Appeals from the County Court for Douglas County: Lawrence E. Barrett, Judge. Appeal in No. S-15-967 dismissed. Judgment and final order in No. S-16-040 affirmed.

Michael F. Coyle, Elizabeth A. Culhane, and Jacqueline M. DeLuca, of Fraser Stryker, P.C., L.L.O., and G. Rosanna Moore and, on brief, John K. Green, of Pickens & Greene, L.L.P., for appellant.

John M. Lingelbach, James A. Tews, and Minja Herian, of Koley Jessen, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

We decide two consolidated appeals from county court proceedings—the first from a final order appointing a conservator and the second from a county court order that acted both as a judgment in a trustee removal proceeding and as

a final order denying fees and expenses in the conservatorship proceeding.

Because the conservatorship appointment order became moot upon the protected person's death while the first appeal was pending, we dismiss the first appeal in its entirety and dismiss the cross-appeal to the extent that it pertains to the first appeal.

In the second appeal, a successor trustee appeals and two beneficiaries cross-appeal from an order removing the successor trustee, declining to surcharge him, disposing of competing attorney fee applications, and otherwise disposing of the trust and conservatorship proceedings. Applying our respective standards of review to the remaining trust and conservatorship issues, we affirm.

## II. BACKGROUND

These consolidated appeals arise from proceedings initiated by Russell G. Abbott and Cynthia J. Sellon (Cynthia) to appoint a conservator for their mother, Marcia G. Abbott, and to remove Marcia as trustee of the "Abbott Living Trust"; to remove their brother, Mark D. Abbott, as successor trustee; to surcharge Mark; and for an accounting. Marcia resigned as trustee before trial, and the county court dismissed the claim seeking to remove her as moot.

Prior to oral argument, a suggestion of Marcia's death was filed in this court, accompanied by a motion to remand the conservatorship proceeding with directions to vacate and dismiss. At oral argument, we granted leave to file a written response, which we have considered. Marcia's death renders moot the issue of the appointment of her conservator, but it does not abate the cause of action.[1] Accordingly, we do not summarize the facts surrounding the appointment of a conservator, and recite only the facts relating to issues not mooted by Marcia's death.

---

[1] See *In re Conservatorship of Franke*, 292 Neb. 912, 875 N.W.2d 408 (2016).

## 1. Abbott Living Trust
### Agreement

Marcia and her husband created a revocable living trust in which they named themselves cotrustees. When Marcia's husband died, the living trust assets were divided between a revocable "Survivor's Trust" and an irrevocable "Family Trust." The two trusts primarily consist of investment accounts.

The trust agreement provided that Marcia, as the surviving spouse, was entitled to the entire net income from the Survivor's Trust account. It also permitted her to withdraw from the principal of the Survivor's Trust as much as she desired.

As to the Family Trust, Marcia had four primary rights or interests. First, she was entitled to the entire net income. Second, she had a "five-and-five power," which limited her to annually withdrawing the greater of $5,000 or 5 percent of the assets from the principal. Third, the trustee could apply an "ascertainable standard." That power permitted the trustee, in his or her discretion, to pay Marcia or her and her husband's shared descendants—Russell, Mark, and Cynthia—so much of the principal as the trustee deemed proper for their health, maintenance, support, and education. Finally, she had a "sprinkling" testamentary power of appointment—that is, a limited power allowing her to dispose of Family Trust assets by will or by a living trust. With this limited power, Marcia could appoint "some or all of the principal and any accrued but undistributed net income of the Family Trust as it exist[ed] at the death of [Marcia]" to Russell, Mark, or Cynthia in "equal or unequal amounts." There is no evidence that Marcia ever exercised this limited power of appointment.

### 2. Marcia's Stroke

In 2011, Marcia suffered a stroke that left her paralyzed on her right side. She had difficulty with speech and communication and was ultimately diagnosed with expressive aphasia—a disorder that affects the brain's ability to use and understand language. Prior to her stroke, Marcia lived at home

and handled her own financial affairs, including management of the two trusts. After her stroke, Marcia needed assisted living and physical therapy and moved into a skilled-care facility. As a necessary result, Marcia's monthly living expenses grew from $500 to over $8,000. Since 2011, Mark has acted as Marcia's agent under a power of attorney.

### 3. MARK'S MANAGEMENT OF TRUST ASSETS

In 2011, after her stroke, Marcia "resigned" as trustee over two financial accounts that were trust assets. She appointed Mark as successor trustee of both accounts. In 2015, before trial, Marcia resigned as trustee in all matters for both trusts and Mark accepted the appointment as successor trustee in all matters.

Before Mark assumed his role as successor trustee of both trusts in the entirety, he understood his roles to be that of successor trustee of two financial accounts associated with the trusts and that of Marcia's agent under the power of attorney. Evidence at trial showed that Mark performed other actions within those roles, purporting to be the trustee of the two trusts in his signature. For example, the evidence showed that Mark signed a bill of sale for a vehicle owned by one of the trusts as "Trustee" in 2013. He also signed a state severance tax return for oil and gas royalties as "Trustee" in 2012. Mark explained that he "'used [his] signatures, [Marcia's] signatures, [power of attorney]/Trustee interchangeably because it really [did]n't matter.'" He believed his power to sign as trustee came from his authority under the power of attorney executed by Marcia.

In that time, Mark also facilitated several transfers of money between different financial accounts associated with the Family Trust and the Survivor's Trust. Several of the transfers exceeded $200,000. At trial, an estate-planning attorney testified concerning the tax consequences of these transfers and opined that the transfers were a violation of the trust terms. Specifically, the witness testified that the two trusts

had substantially different terms and that as a result, the trusts' assets could not be commingled. The witness further testified that because the Family Trust was irrevocable and the Survivor's Trust was revocable, the Family Trust's assets should have been kept separate from the Survivor's Trust's assets to maintain the appropriate tax basis for the assets. Additionally, the witness opined that the assets transferred to the Family Trust would have been subject to gift taxation and that Mark appeared not to have considered these tax issues in managing the trusts' assets.

The evidence at trial also showed that in managing the trusts' assets, Mark worked with Marcia's financial advisor in making investment decisions and all of his investments were recommended by the financial advisor. During the time that Mark managed the trusts, their combined assets increased in value from $1.5 million to a little over $2 million.

### 4. HOSTILITY BETWEEN SUCCESSOR TRUSTEE AND BENEFICIARIES

Russell and Cynthia both testified that they were concerned with Mark serving as successor trustee because of his aggression and resentment toward them. The hostility apparently began after their aunt died and left a disproportionate amount of real estate to Cynthia. Both Russell and Cynthia testified that Mark repeatedly threatened to "make it even" using the assets from the trusts and that he personally blamed Cynthia for her larger share, called her a "vulture," and even claimed Cynthia manipulated and then "murdered" their aunt for her share. Evidence presented at trial showed that Mark considered Cynthia's share to be "ill gotten" and "a grossly unequal share." Separate from the issues with the aunt's estate, Mark also believed that Russell and Cynthia stole from Marcia. And he had threatened to withhold any distributions until the property was returned. Mark's own words described the situation with his siblings as "WWIII" and characterized one of his communications to them as the "2014 equivalent of the Potsdam Declaration."

Russell and Cynthia additionally presented evidence that in 2012, they had requested information from Mark, including a copy of the document creating the trusts; a copy of the periodic statements issued for each of the trusts' financial accounts for the preceding 2 years; an explanation of "any expenditure of the Trust's assets made" by Mark in the preceding 2 years; and a list of the trusts' assets, excluding financial accounts already documented. In response to the request, Mark provided balance sheets and profit-and-loss statements for the 2 years, totaling seven pages. He did not provide copies of the document creating the trusts, periodic statements of financial accounts, or any explanations of expenditures. He explained at trial that he was advised to ignore the request of information related to administration of the trusts, because he had no obligation to supply the requested information.

## 5. County Court's Orders

The conservatorship case and the trust case initially proceeded to a consolidated trial. At the close of Russell and Cynthia's case, Mark moved for a directed verdict, alleging that they had no standing to assert their claims against Mark, because he did not owe them any fiduciary duties. The court overruled this motion and overruled it again after it was renewed at the close of all evidence. We omit summarization of other such motions, which are not contested on appeal.

On September 9, 2015, the county court entered separate orders in the conservatorship and trust cases. We summarize each order.

In the conservatorship order, the court appointed Mark as Marcia's conservator. The order imposed other terms and conditions, but they are not relevant to the appeals before us.

In the trust case, the court concluded that Mark breached unspecified duties to Russell and Cynthia under three sections of the Nebraska Uniform Trust Code[2] but did not violate a fourth section. The order did not elaborate regarding the

---

[2] Neb. Rev. Stat. §§ 30-3801 to 30-38,110 (Reissue 2016).

violations. The court also determined that an accounting had already been provided but sustained the claim for accounting as a violation of another section. The court dismissed the surcharge claim, concluding that no improper moneys or property were converted to Mark for his personal use. The order stated that Mark would be removed as successor trustee upon the appointment of a new successor trustee. Thus, this first order in the trust case reserved the appointment of the new successor trustee for a later order.

Mark and Marcia timely appealed the order appointing a conservator and filed a supersedeas bond. This appeal was docketed as case No. A-15-967. At the same time, they attempted to appeal from the trust case. That appeal was docketed as case No. A-15-968.

After the order in the conservatorship case appointing Mark as conservator but before the appeal in that case was perfected, Russell and Cynthia filed an application for attorney fees, totaling $139,743.25, and costs, totaling $6,112.76, related to both the trust and conservatorship proceedings. This application was filed in both the trust case and the conservatorship case. They also filed an application for Mark to reimburse the trust for attorney fees expended in the trust case with trust moneys.

Very quickly thereafter, the Nebraska Court of Appeals dismissed the trust case appeal, case No. A-15-968, for lack of jurisdiction—no doubt for the lack of a final order because of the reserved appointment of a successor trustee. Before the remaining matters were addressed by the county court, the Court of Appeals sustained an unopposed motion to stay the conservatorship appeal pending disposition of the remaining matters. The Court of Appeals also ordered Mark and Marcia to notify it when the matter was again appealed and directed them to request consolidation of case No. A-15-967 with the new appeal.

Shortly after the Court of Appeals' dismissal of the trust case appeal, the county court appointed a successor trustee,

granted Russell and Cynthia's application for attorney fees in the sum of $44,957.98 and costs of $1,645.48 in the trust case, denied their application for attorney fees in the conservatorship case, and denied the motion to require Mark to reimburse the trust for attorney fees and costs paid from the trust. The order was treated by the county court and the parties as having been filed below in both the conservatorship case and the trust case. The order included an attachment titled "Attorney Fee Analysis" that indicated the $44,957.98 in attorney fees and $1,645.48 in costs were those incurred in the trust case after Marcia resigned as trustee of two financial accounts in April 2011 and before Marcia resigned as trustee in March 2015.

Mark and Marcia then filed the new appeal contemplated by the Court of Appeals. Both the parties and the county court treated the notice of appeal as having been filed in both cases below. The new appeal was docketed as case No. A-16-040. Mark and Marcia then moved for consolidation of cases Nos. A-15-967 and A-16-040, as they had been directed to do by the Court of Appeals. The Court of Appeals then sustained the motion and set a consolidated briefing schedule.

In due course, we moved both appeals to our docket.[3] In recognition of that action, the prefix of each case number was changed from "A" to "S."

## III. ASSIGNMENTS OF ERROR

Mark and Marcia assign that the county court erred in (1) appointing a conservator for Marcia; (2) failing to dismiss Russell and Cynthia's claims in the trust case for lack of standing; (3) removing Mark as trustee; (4) finding that Mark violated §§ 30-3866, 30-3867, 30-3868, and 30-3878; (5) ordering that a portion of Russell and Cynthia's attorney fees and costs for the trust proceeding should be paid out of the trust; and (6) excluding certain evidence at trial.

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

Russell and Cynthia cross-appeal and assign that the county court erred in (1) finding that Mark did not violate § 30-3869, (2) appointing Mark as the conservator for Marcia instead of a corporate fiduciary, (3) disallowing in its entirety Russell and Cynthia's attorney fees and costs in the conservatorship proceeding, (4) reducing the amount of Russell and Cynthia's attorney fees and costs in the trust proceeding, and (5) declining to order Mark to reimburse the trust for attorney fees and costs he expended in the trust proceeding.

Marcia's death renders moot the issue of the appointment of her conservator and abates her appeal, but it does not abate the entire cause of action.[4] Because the appeal in case No. S-15-967 was taken only from the order appointing a conservator, it is dismissed. Marcia's death also moots Russell and Cynthia's assignment on cross-appeal contesting Mark's appointment as conservator. And we dismiss Marcia as a party in each appeal. The only remaining issue pertaining to the conservatorship case is Russell and Cynthia's cross-appeal in case No. S-16-040 assigning error to the denial of their application for attorney fees and costs. This issue was not mooted by Marcia's death. Thus, to the extent that it is inconsistent with our disposition of these appeals, we overrule Mark's motion to remand case No. S-15-967 with directions to vacate and dismiss.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews conservatorship proceedings for error appearing on the record in the county court.[5] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[6]

---

[4] See *In re Conservatorship of Franke*, *supra* note 1.

[5] *Id.*

[6] *Id.*

[3] Appeals involving the administration of a trust are equity matters and are reviewable in an appellate court de novo on the record.[7]

[4] A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion.[8]

## V. ANALYSIS

### 1. Standing to Petition for Removal of Trustee

[5,6] On appeal, Mark renews his argument that Russell and Cynthia lacked standing to petition for his removal as trustee. Standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.[9] Mark argues that Russell and Cynthia did not have a real interest in the trustee removal proceeding, because, under § 30-3855, he owed fiduciary duties exclusively to Marcia. This argument confuses the issue. Section 30-3855 does not dictate who may petition for the removal of a trustee, but, rather, describes to whom fiduciary duties are owed.

[7] Generally, standing in a trustee removal proceeding is governed by § 30-3862(a). That statute does not focus on the fiduciary duties owed by a trustee. Rather, it provides that "[t]he settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative."[10] And, the Nebraska Uniform Trust Code defines a beneficiary as "a person that . . . has a present or future beneficial interest in a trust, vested or contingent[.]"[11]

---

[7] *In re Trust Created by Hansen*, 274 Neb. 199, 739 N.W.2d 170 (2007).

[8] *In re Guardianship & Conservatorship of Karin P.*, 271 Neb. 917, 716 N.W.2d 681 (2006).

[9] *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

[10] § 30-3862(a).

[11] § 30-3803(3).

The parties do not contest that Russell and Cynthia had, at a minimum, a contingent future beneficial interest in the trusts. Accordingly, they had standing to petition the court for Mark's removal.

## 2. Mark's Fiduciary Duties

Having determined that Russell and Cynthia had standing to petition for Mark's removal as trustee, we now consider whether Mark owed any fiduciary duties to Russell and Cynthia. The relevant statute distinguishes between trustees' duties in administering revocable and irrevocable trusts.[12] Therefore, we will separately consider Mark's fiduciary duties owed to Russell and Cynthia in relation to the revocable Survivor's Trust and the irrevocable Family Trust.

### (a) Survivor's Trust

With regard to the Survivor's Trust, though by its own terms it is now irrevocable upon Marcia's death, we must review the trust as it was when Mark served as trustee. And, it is uncontested that the Survivor's Trust was revocable during Marcia's lifetime: Marcia was entitled to the entire net income and could withdraw from the principal of the Survivor's Trust at her will. There was no limitation on this authority, and Russell, Mark, and Cynthia were contingent beneficiaries of the Survivor's Trust assets.

The statute states that "[w]hile a trust is revocable, rights of the beneficiaries are subject to the control of, and the *duties of the trustee are owed exclusively to, the settlor*."[13] Marcia was the only living settlor while Mark served as trustee of the Survivor's Trust. Accordingly, Mark owed his duties as trustee to Marcia, and no one else in administering the Survivor's Trust.[14]

---

[12] § 30-3855.

[13] § 30-3855(a) (emphasis supplied).

[14] See *Manon v. Orr*, 289 Neb. 484, 856 N.W.2d 106 (2014).

[8] Although Mark did not owe fiduciary duties to Russell and Cynthia in administering the Survivor's Trust, this is not the end of our analysis. A serious breach of a fiduciary duty is only one of the grounds for removal of a trustee.[15] Because of the shared beneficiaries and trust agreement creating both trusts, if removal for breach of fiduciary duty was appropriate for the trustee of the Family Trust, the county court had the power in equity to determine it was in the best interests of the beneficiaries to remove the trustee of the Survivor's Trust.[16]

### (b) Family Trust

#### (i) Marcia's Power of Appointment

Mark argues that he did not owe any fiduciary duties to Russell and Cynthia as trustee of the Family Trust, because Marcia possessed a limited power of withdrawal that, hypothetically, could have completely divested Russell and Cynthia of their interest in the Family Trust. And, under the same statute, "the holder of a *power of withdrawal* has the rights of a settlor of a revocable trust under this section and the duties of the trustee are owed exclusively to the holder of the power to the extent of the property subject to the power."[17] We find no merit in this argument, because Marcia did not possess a power of withdrawal.

The Nebraska Uniform Trust Code defines a "power of withdrawal" as "a presently exercisable *general* power of appointment."[18] A power of appointment is general when "it is exercisable in favor of any one or more of the following: the donee of the power, the donee's creditors, the donee's estate, or the creditors of the donee's estate."[19]

---

[15] See § 30-3862.

[16] See *id.*

[17] § 30-3855(b) (emphasis supplied).

[18] § 30-3803(11) (emphasis supplied).

[19] Restatement (Second) of Property: Donative Transfers § 11.4 (1986).

It is clear from the language of the trust that Marcia did not possess a presently exercisable general power of appointment. The trust agreement provides in part:

> By either a last will or by a living trust agreement, the surviving Trustor shall have the limited testamentary power to appoint to or *for the benefit of our joint descendants* some or all of the principal and any accrued but undistributed net income of the Family Trust as it exists at the death of the surviving Trustor.

(Emphasis supplied.) By limiting the appointment power as exercisable solely in favor of their joint descendants, Marcia and her husband ensured that they would never possess a general power of appointment in the Family Trust. Because the limited power of appointment was not a general power of appointment, it was not a power of withdrawal under § 30-3855(b).

### (ii) Russell and Cynthia's Present Interest in Trust

Mark additionally argues that as the trustee of the Family Trust, he owed no duties to Russell and Cynthia, because they did not have a present interest in the trust and "during the period the interest of any beneficiary not having a present interest may be terminated by the exercise of a power of appointment . . . , the duties of the trustee are owed exclusively to the holder of the power to the extent of the property subject to the power."[20] We find no merit in this argument, because Russell and Cynthia had a present interest in the trust.

[9,10] The extent of the beneficiary's interest in a trust depends upon the discretionary power that the settlor intended to grant the trustee.[21] And, when the parties do not claim that the terms are unclear or contrary to the settlor's actual intent, the interpretation of a trust's terms is a question of law.[22]

---

[20] § 30-3855(c).

[21] *In re Trust Created by Hansen, supra* note 7.

[22] *Id.*

[11,12] The trust agreement provided for the discretionary payment of the Family Trust principal to Marcia, Russell, Mark, and Cynthia. The relevant provision states:

> At any time or times during the trust term, our Trustee *shall* pay to or apply for the benefit of the surviving Trustor and our joint descendants so much of the principal of the Family Trust as our Trustee *in its discretion* deems proper for their *health, maintenance, support and education.*

(Emphasis supplied.) Though this provision grants discretion to the trustee in determining when and how much of the principal to pay to support Marcia, Russell, Mark, or Cynthia, it is clear that this provision was meant to establish a support trust for those beneficiaries. In general, trustees of support trusts have discretion to determine what is needed for the beneficiary's support and to make payments only for that purpose.[23] But this level of discretion does not preclude a beneficiary from seeking to show that a trustee has abused its discretion in failing to make support payments.[24] For these reasons, we find that Russell and Cynthia had an enforceable, present interest in the Family Trust. As a result, § 30-3855(c) did not apply and, thus, Mark owed fiduciary duties to Russell and Cynthia as well as Marcia.

### (c) Effect of Power of Attorney

Mark additionally argues that during the times that Russell and Cynthia alleged he violated duties as trustee, he owed no duties to them, because he was acting as Marcia's agent under a power of attorney and Marcia remained the trustee. The parties do not contest that Marcia resigned as trustee over two financial accounts associated with the trusts and appointed Mark as successor trustee of those accounts in 2011. Assuming that Marcia had the authority under the trust agreement to resign as trustee over part of the two trusts and that Mark

---

[23] *Id.*

[24] *Id.*

could act as successor trustee over part of the two trusts, Mark was, at the very least, a cotrustee with Marcia.

[13] A trustee is liable for the action of another trustee if he joins in the action, fails to prevent the cotrustee from committing a serious breach of trust, or fails to compel the cotrustee to redress a serious breach of trust.[25] At the very least, Mark acted as cotrustee with Marcia in managing the two financial accounts and served as Marcia's agent under a power of attorney in managing all other trust affairs. Accordingly, Mark joined in all actions by Marcia in administering the trust and owed fiduciary duties to Russell and Cynthia under the Family Trust.

### 3. Removal of Trustee

Mark assigns that the county court erred in removing him as trustee of the trust, because the evidence does not support a finding that he owed or breached any fiduciary duties to Russell and Cynthia. The Nebraska Uniform Trust Code authorizes removal of a trustee where "the trustee has committed a serious breach of trust" or "because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries."[26]

[14,15] A trustee has the duty to administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with the Nebraska Uniform Trust Code.[27] The Nebraska Uniform Trust Code states that trustees owe the beneficiaries of a trust duties that include loyalty, impartiality, prudent administration, protection of trust property, proper recordkeeping, and informing and reporting.[28]

---

[25] See § 30-3859; Restatement (Second) of Trusts § 184 (1959).

[26] § 30-3862(b)(1) and (3).

[27] *Rafert v. Meyer*, 290 Neb. 219, 859 N.W.2d 332 (2015).

[28] *In re Estate of Stuchlik*, 289 Neb. 673, 857 N.W.2d 57 (2014).

The county court found that Mark had violated several of these duties, including his duty to administer the trust in good faith, his duty of loyalty, his duty of impartiality, and his duty to inform and report. The court specifically found that Mark had not violated his duty of prudent administration.

[16] Mark's violation of his duty of impartiality is dispositive. The Nebraska Uniform Trust Code states, "If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests."[29] A cause for removal of a trustee is appropriate for the best interests of the trust estate where hostile relations exist between a trustee and beneficiaries of such a nature as to interfere with proper execution of the trust, particularly where it appears that the trustee's personal interests conflict with, or are antagonistic to, his or her duties as trustee under the terms of the trust.[30]

[17,18] Mark contends that the court did not have the authority to consider whether he breached his fiduciary duty of impartiality under § 30-3868, because Russell and Cynthia did not plead violation of that duty in their petition. It is true that the issues in a given case will generally be limited to those which are pled.[31] However, while the Nebraska Rules of Pleading in Civil Actions, like the federal rules, have a liberal pleading requirement for both causes of action and affirmative defenses, the touchstone is whether fair notice was provided.[32] In our de novo review of the record, we find that Russell and Cynthia alleged sufficient facts in their petition to put Mark on notice of this claim. And, notably, their counsel alleged during opening statements that Mark violated § 30-3868 and Mark's counsel did not object to this as beyond

---

[29] § 30-3868.

[30] *In re Estate of Stuchlik, supra* note 28.

[31] *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014).

[32] *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005).

the scope of the pleadings. Therefore, the issue was properly before the county court.

[19] Impartiality means that a trustee's treatment of beneficiaries or conduct in administering a trust is not to be influenced by the trustee's personal favoritism or animosity toward individual beneficiaries.[33] The evidence on the record indicates that Mark harbored significant bitterness and hostility toward Russell and Cynthia. Mark accused Russell of stealing from Marcia and accused Cynthia of murdering his aunt. He additionally threatened to "make even" the distributions from his aunt's will with trust assets, evidencing a personal interest in acquiring a larger portion of the trust assets than the other beneficiaries upon Marcia's death. Here, Mark's personal interests conflicted with his duties as trustee. For these reasons, the county court did not err in finding that Mark had violated his duty of impartiality.

[20,21] A finding of one serious breach of fiduciary duty is enough to warrant removal of a trustee.[34] And an appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[35] Accordingly, we need not review the other assigned errors concerning Mark's other fiduciary duties.

4. Attorney Fees and Costs

(a) Application for Attorney
Fees and Costs

Russell and Cynthia assign that the county court erred when it reduced their application for attorney fees and costs in the trust proceeding. The application requested $139,743.25 in attorney fees and $6,112.76 in costs, and the court awarded $44,957.98 in attorney fees and $1,645.48 in costs. They also assign that the county court erred in disallowing in its

---

[33] *In re Estate of Stuchlik, supra* note 28.

[34] § 30-3862(b)(1).

[35] *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015).

entirety their attorney fees and costs in the conservatorship proceeding.

[22,23] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.[36] A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.[37] Although the county court's reasoning in reducing the award of attorney fees in the trust proceeding and disallowing the award of attorney fees in the conservatorship proceeding was not explicit, we find no abuse of discretion in the county court's order.

### (b) Application for Trustee to Reimburse Trust

Russell and Cynthia additionally assign that the county court erred when it declined to order Mark to reimburse the trust for his attorney fees and costs paid out of the trust. We again review for abuse of discretion and find none.

### 5. Exclusion of Certain Evidence

Finally, Mark assigns that the county court abused its discretion in excluding certain evidence. He alleges that the excluded evidence would have established Russell and Cynthia's wrongful motives for bringing the two lawsuits: namely, that they "brought these lawsuits out of concern for their potential inheritance and not due to any concerns for [Marcia]."[38] Mark argues that two pieces of evidence were wrongfully excluded.

The first piece of evidence was an e-mail sent by Russell to Cynthia that was not produced during pretrial discovery to

---

[36] *In re Guardianship & Conservatorship of Karin P., supra* note 8; *In re Trust Created by Martin*, 266 Neb. 353, 664 N.W.2d 923 (2003).

[37] *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015).

[38] Brief for appellant at 38.

Mark but was discovered when it was attached to a guardian ad litem's report. The county court excluded the evidence at trial when Mark offered it, because he did not produce the e-mail in response to pretrial discovery. Mark argues that the county court erred in excluding this evidence, because Neb. Ct. R. Disc. § 6-334(a)(1) requires parties to produce documents only "which are in the possession, custody, or control of the party upon whom the request is served" and, at the time he received discovery requests, he was not in possession of the e-mail.

The second piece of evidence was a contact log created by Cynthia that detailed events surrounding her aunt's death and wrapping up her estate. The county court excluded the log as irrelevant, and Mark argues this was prejudicial error. He asserts that the log included a party admission that contradicted Russell and Cynthia's theory that Mark was trying to turn Marcia against them and equalize the distributions for their aunt's estate.

[24,25] Assuming, without deciding, that the county court erred in excluding these two pieces of evidence, the error was harmless. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[39] An order affects a substantial right if the order affects the subject matter of the litigation, such as diminishing a claim or defense that the appellant had before the court entered the order.[40] Here, the subject matter of the litigation was Mark's actions as trustee and not Russell and Cynthia's motives in petitioning for his removal. And, to the extent that their conflicting motivations would bear on their attorney fees, it is clearly harmless where the county court disallowed attorney fees in the conservatorship case and substantially reduced the award of attorney fees

---

[39] *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015).

[40] *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010).

in the trust case. Accordingly, the exclusion of the evidence did not affect a substantial right and was, at most, harmless error.

## VI. CONCLUSION

We dismiss the appeal and cross-appeal in case No. S-15-967 as moot, because that appeal pertained only to the order appointing a conservator for Marcia. Turning to the appeal and cross-appeal in case No. S-16-040, we find no abuse of discretion in the county court's dispositions of attorney fees and costs in both the conservatorship case and the trust case. We determine that any evidentiary error was harmless. And upon our de novo review, we affirm the removal of Mark as trustee and the appointment of his successor. Thus, we affirm the county court's December 29, 2015, final order in the conservatorship case and affirm the court's judgment in the trust case.

APPEAL IN No. S-15-967 DISMISSED.
JUDGMENT AND FINAL ORDER IN
No. S-16-040 AFFIRMED.

MILLER-LERMAN, J., not participating.