IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE TRUST CREATED BY TURNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE TRUST CREATED BY ANTONETTE W. TURNER.

BARRY D. TURNER, APPELLANT,

V.

ANTONETTE W. TURNER, APPELLEE.

Filed June 18, 2019.    No. A-18-288.

Appeal from the County Court for Webster County: MICHAEL O. MEAD, Judge. Affirmed.

J.L. Spray, of Mattson Rickets Law Firm, for appellant.

David H. Fisher, of Dunmore, Fisher, Hastings & Pauley, for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Barry D. Turner appeals the order of the Webster County Court finding that his mother, Antonette W. Turner, had the capacity to amend her revocable trust to remove him as a beneficiary and that the trustee of her trust should not be removed in his role as a fiduciary for the trust. For the reasons stated below, we affirm.

## STATEMENT OF FACTS

### BACKGROUND AND PRETRIAL MOTIONS

Antonette was the settlor and beneficiary of the Antonette W. Turner Revocable Trust (Trust) which held interest in both real estate and a financial portfolio worth over $1,000,000. Prior

- 1 -

to Barry's filing of this suit, both of Antonette's children, Alana Hoyt and Barry, were contingent beneficiaries of the Trust and had served as trustees of the Trust. However, following a dispute between Alana and Barry in 2012, Antonette removed her children as trustees and named her nephew, Steve Skupa, as trustee. Skupa continued to act as trustee through the time of the trial.

The year after being removed as a trustee of Antonette's trust, in 2013, Barry unsuccessfully instigated a protective proceeding in the Webster County Court seeking to have a guardian appointed for Antonette. After this unsuccessful litigation, in December 2015, Barry filed a petition as a Trust beneficiary seeking to remove Skupa as trustee claiming that Skupa had misrepresented to the Webster County Assessor that the Trust held certain real estate belonging to Barry's son and had "taken hostile action" against Barry. Antonette filed a response denying those allegations and alleging that Barry had repeatedly brought legal proceedings against her to "wrongly question her capacity and integrity, and that of her professional agents, which place her under great stress and anxiety."

Following Barry's commencement of this action, Antonette amended her Trust to remove Barry as a contingent beneficiary. Barry responded by filing an amended petition alleging that the Trust amendment removing him as a beneficiary was invalid because Antonette lacked capacity to amend the Trust. In response, Antonette alleged that she had capacity and requested the court "appoint a guardian ad litem or visitor for [her] to investigate [her capacity] and report to the court." Shortly thereafter, Antonette filed a motion for appointment of Michelle Oldham as guardian ad litem (GAL), alleging that her appointment might expedite a determination of her capacity. Prior to any hearing being held, the court entered an order appointing "Michelle Oldham, attorney at law, as guardian ad litem of the person alleged to be incapacitated to conduct an evaluation of the allegations of incapacity to determine [Antonette]'s best interests." Oldham had previously been appointed as GAL in connection with Barry's 2013 petition to have a guardian appointed for Antonette.

On December 1, 2016, Barry filed a motion pursuant to Neb. Ct. R. Disc. § 6-335 requesting the court order Antonette to submit to a mental examination to examine her mental capacity. In response, Oldham filed an objection stating that she had completed her investigation and that she had found "absolutely no evidence that [Antonette] suffers from any illness, mental or physical, or that she has emotional of mental health impairments." Two days later, Oldham filed her report with the court documenting her findings in connection with her investigation. The report documented Oldham's interview with Antonette and opined that Antonette was "completely lucid," that Antonette remembered details of their previous conversations years before when Oldham previously served as her GAL, and that Antonette revealed facts from their prior dealings which Oldham herself had forgotten. The report detailed that Oldham was unable to interview Barry or any individuals he believed would support his position that Antonette lacked mental capacity. Oldham attached a copy of her 2013 report (where she served as GAL in connection with Barry's previous allegations that Antonette lacked capacity) in which she had concluded, "It became clear to me after speaking with [Barry and his son] that there is an almost obsession with trying to make [Antonette] look bad." Oldham's current report ultimately concluded that she found no reason to believe Antonette could not presently make decisions for herself.

Following the submission of Oldham's report, the court held a hearing on Barry's motion for mental status exam; however, that hearing was not made part of the record. The court then denied the motion in an order stating:

> Here, there has been no evidence presented which would support [Antonette] being examined by a neuropsychologist or other mental health professional. To require [Antonette] to submit to such an examination could cause her undue stress and fatigue. In addition, [Barry] has presented no evidence to this point which would suggest that [Antonette] suffers from any form of disability or impairment which would justify such an order. [Barry] appears to rely solely on the allegations contained in the Amended Petition for Removal of Successor Trustee and Petition for Determination of Validity of Trust Amendment to support his motion.
>
> Therefore, finding that no good cause exists, the Court hereby overrules the Motion for Mental Examination of the Settlor.

TRIAL

The trial in this matter commenced on November 28, 2017. Barry adduced evidence from himself and Antonette. Antonette did not offer any evidence. Throughout the trial, the GAL made several evidentiary objections and cross-examined Barry. Further, the GAL requested that the court take judicial notice of her report or receive it as an exhibit. The court took judicial notice of the GAL's report after receiving no objection from Barry's counsel.

Barry testified regarding the history of the Trust and stated that Antonette told him she removed him as trustee because she did not trust him anymore, but she later indicated that she was mad at him over a dispute involving his sister arising from the former distribution of an interest in land. He stated that Antonette, Barry, and Alana all had held an interest in a parcel of farmland, and Antonette gifted her interest to her children. Barry testified that, when the land interest was divided in 2011, both Alana and Antonette believed that Alana received less than half of the value of the land. Barry believed this dispute led to his removal as trustee.

Barry also called Antonette as a witness. She testified first that she was the trustee of her Trust, but acknowledged she later made Barry and Alana successor trustees and ultimately removed them and replaced them with Skupa. When asked about the contents of her Trust, she stated: "My trust is what I own. That's worth -- that's what I own. . . . Well, all the land probably, I suppose, and everything. I don't know what's included. I suppose it is everything." When asked if her Trust held any financial assets, she recognized the value of her Edward Jones account as containing over $1,000,000. In order to impeach this testimony, Barry's counsel reviewed prior deposition testimony where Antonette claimed the land was the sole asset in her Trust and that it did not contain an Edward Jones account. Specifically, Barry's counsel asked, "[A]t the time I took your deposition, you didn't remember that your trust has that money in the Edward Jones Account?" She answered at trial only that she did have money in the Edward Jones account. When asked about Trust distributions, Antonette listed distributions made from her trust, explained their purposes, and testified that she had requested or authorized them.

The court found that Antonette had the capacity to amend her Trust based on Antonette's testimony and the GAL's reports. The court therefore found the Trust amendment removing Barry as a beneficiary was valid. The court declined to remove Skupa as trustee, found that Barry had not proven a breach of fiduciary duty, and required Barry to pay attorney fees for Antonette's attorney, GAL fees, and all costs. Barry timely appeals.

## ASSIGNMENTS OF ERROR

Barry assigns that the county court erred (1) by appointing a guardian ad litem (GAL) without notice and a hearing as required by Uniform County Court Rule § 6-1417, (2) by exceeding its statutory and general authority to appoint a GAL, (3) by relying on the GAL's report in entering its order, (4) by permitting the GAL to exceed her statutory authority and act as a party in the proceedings, (5) in awarding attorney fees to the GAL, (6) in holding that the settlor had testamentary capacity in June 2016 when she executed the Amended Trust Agreement removing Barry as contingent beneficiary, and (7) in denying Barry's motion for a mental exam.

## STANDARD OF REVIEW

Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record. *In re Rolf H. Brennemann Testamentary Trust*, 288 Neb. 389, 849 N.W.2d 458 (2014). Appeals involving the administration of a trust are equity matters and are reviewable in an appellate court de novo on the record. *In re Conservatorship of Abbott*, 295 Neb. 510, 890 N.W.2d 469 (2017). A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *Id.*

## ANALYSIS

### APPOINTMENT OF GUARDIAN AD LITEM

Barry's first four assignments of error are directed at the court's alleged error in connection with the appointment of the GAL, the GAL exceeding her statutory authority in connection with these proceedings, and the court's reliance on the GAL's report in its findings and entry of its orders. While we acknowledge that Barry had little opportunity to object before the order appointing a GAL was made, we find that these first four assignments of error were waived.

In order to be timely, an objection must ordinarily be made at the earliest opportunity after the ground for the objection becomes apparent. *State v. Partee*, 240 Neb. 473, 482 N.W.2d 272 (1992). Barry could have filed an objection to the appointment or otherwise brought this alleged error to the attention of the court. He failed to do so. Instead, following the GAL's appointment, the GAL was allowed to participate in the proceedings including but not limited to issuing her report, making filings with the court, submitting an objection to Barry's motion for mental examination, and participating at trial, all without objection from Barry. Further, at trial, the GAL's report was offered and received without objection. At no time during these proceedings did Barry lodge an objection to the GAL's appointment, scope of authority or participation, issuance of report, or other involvement in the case. The Nebraska Supreme Court has repeatedly said that one

may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error. *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014).

Barry cannot be heard to say at this late juncture that the court erred in the appointment of the GAL, that the GAL exceeded her authority, or that the GAL's report was wrongly received or relied upon by the court. Having failed to object before the county court, Barry has clearly waived these assigned errors.

### PLAIN ERROR

Barry also requests that this court find that the county court committed plain error with respect to the appointment of the GAL as well as the level of participation that the GAL was allowed to engage in at trial. Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Houser v. American Paving Asphalt*, 299 Neb. 1, 907 N.W.2d 16 (2018).

> A court, under its inherent equitable powers, may appoint a guardian ad litem. A guardian ad litem may or may not be an attorney. The guardian ad litem's duties are to investigate the facts and learn where the welfare of his or her ward lies and to report these facts to the appointing court. These reports to the court, whether in written form or testimony by the guardian ad litem, including hearsay, shall be subject to the Nebraska rules of evidence. A guardian ad litem may be an attorney, but an attorney who performs the functions of a guardian ad litem does not act as an attorney and is not to participate in the trial in an adversarial fashion such as calling or examining witnesses or filing pleadings or briefs. If the guardian ad litem feels that he or she needs an attorney, the guardian ad litem should apply to the appointing court for permission to retain an attorney to represent the guardian ad litem.

*Betz v. Betz*, 254 Neb. 341, 345, 575 N.W.2d 406, 409 (1998).

We further note that, effective April 19, 2016, prior to the court's appointment of a GAL in this case, the Nebraska Legislature enacted Neb. Rev. Stat. §§ 30-4201 to 30-4210 (Reissue 2016) governing guardians ad litem. Specifically, § 30-4201 provides:

> The Legislature finds that it is in the best interests of persons under disability and the public for the authorities and responsibilities of a guardian ad litem to be expanded to include an objective investigation and assessment of the needs of a person who comes before the court in any guardianship, conservatorship, or other protective proceeding to ensure the protection of the rights of the person who is the subject of the proceeding. The Legislature also finds that the public is benefited from having trustworthy and competent guardians and conservators appointed for incapacitated persons, wards, protected persons, and minors.

Although the statute appears to expand the role of a guardian ad litem beyond the scope of a guardian ad litem in connection with a court's equitable appointment, the statute appears to limit

such statutory appointments to guardianship, conservatorship, or other protective proceedings. See § 30-4203.

We have concerns here regarding the scope and utilization of the GAL in connection with the subject matter of this action which was a request to remove the Trust's trustee and set aside a trust amendment on the basis of the settlor's alleged lack of capacity. More specifically, while we acknowledge the court's equitable powers in connection with trust proceedings, see Neb. Rev. Stat. § 30-3806 (Reissue 2016) providing "[t]he common law of trusts and principles of equity supplement the Nebraska Uniform Trust Code, except to the extent modified by the code or another statute of this state," we recognize that a statutory appointment of a guardian ad litem appears applicable to guardianship, conservatorship, or other protective proceedings. The county court did not expressly indicate in its order whether the court's appointment of the GAL was an equitable appointment or a statutory appointment, and as mentioned, this matter was never brought to the attention of the county court and never expressly ruled upon.

Under the doctrine of plain error, plain error is limited to circumstances which, if left uncorrected, would cause a miscarriage of justice or result in damage to the integrity, reputation, or fairness of the judicial process. Having reviewed the entirety of this record, including but not limited to the lack of direct evidence offered by Barry in connection with his claim that Antonette lacked capacity, Barry's decision not to challenge the GAL's appointment or role at any stage of this proceeding before the county court, and the fact that Antonette was separately represented by counsel in these proceedings, we cannot say that the GAL's involvement resulted in a miscarriage of justice. We find that, under this record, the GAL's appointment and involvement did not rise to the level of plain error.

"ATTORNEY" FEES

Barry next assigns that the county court erred in assessing attorney fees against him in favor of the guardian ad litem. Barry misconstrues the county court's order. In its order, the county court awarded GAL fees to the GAL, not attorney fees. Barry presents no authority or argument that the county court cannot award GAL fees in connection with the county court's appointment. This assignment of error fails.

MENTAL EXAMINATION

Barry contends that the county court erred in denying his motion for a mental examination. Specifically, he argues that the court inappropriately relied on the GAL report in connection with this hearing. However, Barry has not provided us with a record of the motion for mental examination hearing in the bill of exceptions.

It is incumbent on the party appealing to present a record that supports the errors assigned; absent such a record, as a general rule, the decision of the lower court as to those errors will be affirmed. *JCB Enters. v. Nebraska Liq. Cont. Comm.*, 275 Neb. 797, 749 N.W.2d 873 (2008). Evidence which is not made part of the bill of exceptions may not be considered. *State v. Saylor*, 294 Neb. 492, 883 N.W.2d 334 (2016). Further, Neb. Ct. R. Disc. § 6-335 provides:

When the mental or physical condition . . . of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental

examination by one or more physicians, or other persons licensed or certified under the laws to engage in a health profession . . . . The order may be made only on motion for good cause shown[.]

Here, following a hearing on Barry's motion and reviewing the evidence, the court found that Barry failed to adduce evidence of good cause to require Antonette to submit to a mental examination. In fact, in its order, the court noted that Barry failed to provide evidence and appeared to rely solely on his pleading in order to obtain his requested relief. Having failed to produce a record of this hearing and, since the face of the order states that Barry failed to offer any evidence in furtherance of his request, we cannot say that the court erred in overruling this motion. This assignment of error fails.

ANTONETTE'S TESTAMENTARY CAPACITY

Barry's final assignment of error is that the county court erred in finding that Antonette's Trust amendment removing him as a contingent beneficiary of the Trust was valid. First, he argues that the court failed to find that Antonette lacked capacity at the time of the amendment. Second, he argues that the court, in making its determination, inappropriately relied on the GAL's report.

To set aside an instrument for lack of mental capacity on the part of the person executing such instrument, there must be clear and convincing evidence that the mind of the person executing the instrument was so weak or unbalanced when the instrument was executed that the person could not understand or comprehend the purport and effect of what he or she was doing. *In re Trust Created by Nabity*, 289 Neb. 164, 854 N.W.2d 551 (2014).

At trial, Barry's only evidence in support of Antonette's alleged lack of capacity was her response to questions in which Barry alleged Antonette appeared somewhat confused. Barry provided no medical evidence or testimony which suggested Antonette lacked capacity, nor did he produce witnesses who would in any way support his theory. To the contrary, the majority of the evidence offered and received at trial supported Antonette's competency, including Antonette's own testimony and the GAL's report. Further, as we noted previously in this opinion, Barry failed to object when the GAL's report was offered and received into evidence and waived any claim that the court erred in relying on this report. Finally, we note the county court observed at trial that Antonette "is extremely spry and alert for a woman of her age." Any conflicts in the evidence or questions concerning the credibility of witnesses are for the finder of fact to resolve. *State v. Heng*, 25 Neb. App. 317, 905 N.W.2d 279 (2017). The county court did not err in finding that Antonette had capacity to amend her Trust in 2016 and this assignment of error therefore fails.

CONCLUSION

Having considered Barry's assignments of error and either finding them to be waived or having failed, the order of the county court is affirmed in its entirety.

AFFIRMED.